THE TRUSTEES OF THE FREEHOLDERS AND COMMONALTY OF THE TOWN OF SOUTHAMPTON, Appellant, *v.* FREDERIC H. BETTS, Respondent, Impleaded with Another.

TOWN OF SOUTHAMPTON — TRUSTEES OF TOWN CANNOT MAINTAIN ACTION OF EJECTMENT TO RECOVER OCEAN BEACH. Since the passage of chapter 155 of the Laws of 1818 the title to the ocean beach at Southampton, Long Island, above high-water mark, whether regarded as " undivided " or as " common " lands of the town, has been in the trustees of the proprietors, and the trustees of the town have had no title to the beach, and cannot maintain an action of ejectment against persons claiming title to a portion thereof under the trustees of the proprietors, notwithstanding the statute reserved to the trustees of the town the right of management of certain shore privileges for the benefit of the town.

*Trustees of Southampton* v. *Betts,* 21 App. Div. 435, affirmed.

(Argued May 24, 1900; decided June 19, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 15, 1897, affirming a judgment in favor of defendants entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Thomas Young, Timothy M. Griffing* and *James C. Carter* for appellant. The entire legal and beneficial title to the land in question was originally vested in the plaintiff. (*Town of Southampton* v. *M. B. O. Co.*, 116 N. Y. 1.) The mere facts of the reservation of the sandy strip or belt from private allotment, its physical nature and the general use to which it has been appropriated, make it the common property of the town, and prevent it from falling under the description of " lands, meadows and mill streams " contained in the act of 1818. Under the facts and the evidence in the case respecting the use of the particular part of the beach in question, an affirmative appropriation had been made by the town of the whole beach to the common use and benefit of the inhabitants prior to the act of 1818. And as to the particular tract described in the complaint, the general use by the inhabitants had been so common, continuous and necessary for a period of nearly two centuries that no question of fact arises, even though it were regarded as essential that an affirmative appropriation, such as above mentioned, should be established. (*F. N. Bank* v. *Dana*, 79 N. Y. 108; *Trustees of East Hampton* v. *Kirk*, 68 N. Y. 459; *Stokes* v. *Mackay*, 140 N. Y. 649; *White* v. *Hoyt*, 73 N. Y. 505; *Kenyon* v. *K. T. & M. M. Assn.*, 122 N. Y. 247.)

*James R. Sheffield, James J. Cosgrave* and *Frederic H. Betts* for respondent. Prior to the act of 1818 whatever title to the common and undivided lands was held by the trustees of the town of Southampton was held in trust for the proprietors. After the passage of the act of 1818 the legal and equitable title to the common and undivided uplands was

vested in the trustees of the proprietors. (*Trustees of East Hampton* v. *Kirk*, 68 N. Y. 459 ; *Town of Southampton* v. *M. B. O. Co.*, 116 N. Y. 1.) The plaintiffs have established no title to the property in dispute. The alleged acts of so-called "appropriation to public use" of this property are wholly insufficient to prove title. If they have any tendency to prove anything, they would be pertinent only to prove the existence of an easement, and where an easement is sufficient a title in fee will not be implied. (*Hill* v. *Lord*, 48 Me. 100 ; *Green* v. *Chelsea*, 24 Pick. 71; Washb. on Ease. [4th ed.] 70 ; Gerard on Titles, 744 ; *Curtis* v. *Keesler*, 14 Barb. 265 ; *Munson* v. *Hungerford*, 6 Barb. 265 ; *Post* v. *Pearsall*, 22 Wend. 425 ; *Meyer* v. *Phillips*, 97 N. Y. 485 ; *Hunter* v. *Trustees of Sandy Hill*, 6 Hill, 407 ; *Cincinnati* v. *White*, 6 Pet. 431.) There was no question for the jury. (*Roberts* v. *Baumgarten*, 110 N. Y. 380 ; *McRoberts* v. *Bergman*, 132 N. Y. 73 ; *Wallace* v. *Swinton*, 64 N. Y. 188 ; *People* v. *Van Rensselaer*, 9 N. Y. 291; *Sweet* v. *B., N. Y. & P. Ry. Co.*, 79 N. Y. 294 ; *Bates* v. *L. Mfg. Co.*, 20 N. Y. S. R. 778 ; *Doherty* v. *Malsett, Jr.*, 16 N. Y. S. R. 592 ; *Rudd* v. *Davis*, 3 Hill, 287 ; *Lomer* v. *Meeker*, 25 N. Y. 361 ; *Appleby* v. *A. F. Ins. Co.*, 54 N. Y. 253.)

Gray, J. The plaintiff brought this action, in ejectment, to recover a tract of land in the town of Southampton, Long Island, lying between the shore of the town pond, on its northerly side, and the Atlantic ocean, on its southerly side. It involves that portion of the shore of the ocean which lies above high-water mark and the legal question, which the plaintiff raises, concerns the power of the "Trustees of the Proprietors of the common and undivided land of the town of Southampton" to sell the land of the beach. The deed under which the defendant claims was made to his predecessor in title by these trustees in 1881. It bounds the premises conveyed on the ocean side by "the line of the ocean" and it reserves, in the conveyance, the right to the public of passing

and repassing along the ocean shore, of bathing in the ocean and of landing boats at the head of the pond, etc.   Since this conveyance, the beach hills, or sand dunes, have been used for the building of the defendant church and of various cottages for summer residents.

The plaintiff's success in the action was dependent upon the strength of its own showing of title and the burden of proving that title and the consequent right to the possession of the land described in the complaint rested upon it.   I think it to be perfectly clear that the plaintiff has had no title since the passage of chapter 155 of the Laws of 1818.   Originally, under the patent issued by Governor Andross, in 1676, the legal title to all the lands was vested in the plaintiff, then created a corporation, and subsequently, by Governor Dongan's charter, in 1686, that title was confirmed in the trustees, etc., of the town of Southampton, in trust for the original purchasers and proprietors, their heirs and their assigns.   By reason of the increase of the population of the town, by the advent of new inhabitants who were not proprietors, in later times, some friction existed in the community as to the respective rights and interests of the proprietors and of those of the inhabitants who had no interest in the unallotted lands of the town.   The act of 1818 was then passed, as a measure of compromise agreed to by the parties.   That act created a body of trustees for the proprietors of the undivided lands and meadows in the town of Southampton and there were conferred upon them all rights of management of the " undivided lands, meadows and mill streams" of the town and the power to " sell, lease and partition" the same; while there were reserved to the trustees of the town, this plaintiff, the right of management of the waters within the town and of "the fisheries, seaweed and productions of the waters," for the benefit of the town, and to its inhabitants was reserved " the privilege of taking seaweed from the shores of any of the common lands of the town."   The title to the lands, which was conferred by the earlier patents, or charters, which have been referred to, and the effect upon that title of the act of

58

1818 have been passed upon by this court in the case of this plaintiff against the *Mecox Bay Oyster Company* (116 N. Y. 1); a case which leaves but little ground for much further contention over the title of the trustees of the proprietors, through whose grant the defendant's title is derived.

The appellant claims that lands of two descriptions are dealt with by the act, viz.: the "undivided lands, meadows and millstreams" and "the common lands of said town" and that there were, in fact, the one kind of land of a tillable nature and another kind of land, having a different character and being essentially of that public nature which highways, cemeteries and beaches are deemed to have. It is insisted that the beach was a part of the common lands of the town, held by its trustees for a public use, and that it necessarily was so from its peculiar character and from the uses to which it was put. It is argued that the act, in its transfer of title from the one set of trustees to the new set, then created, concerned only lands which always had been those of the proprietors and which remained undivided; that those undivided lands did not include lands inherently of the character of such as usually are held for public use and that there was evidence proving, or tending to prove, that the beach, or seashore, had always been reserved for the public use and, therefore, could not have been comprehended within the lands affected by the act of 1818. This evidence, it is contended, was such, in sufficiency and quality, to authorize the submission to the jury of the question whether the beach was not reserved. But I think that the evidence neither supports the theory of the plaintiff's action, nor is of that character which is attributed to it. The evidence shows that this beach, or seashore, as were other beach lands in the vicinity, was used for sea fishing and purposes incidental thereto, for watching for whales and purposes connected with their catch, for bathing and for carting away of wreckage deposited. Boats were hauled up and kept upon the shore; seines were spread out upon it and persons passed, and repassed, and occupied themselves upon it, in ways which would be usual to the inhabit-

ants of a fishing village or settlement. All this, however, was but proof of temporary uses by the inhabitants of the town. In the grant of Governor Dongan to the plaintiff, " the beaches" were included with " the tracts and necks of land " and all were held under the same trust for the original purchasers or proprietors. The shore lands, or beaches, were just as much common and undivided lands, within the terms of the trust, as were any other lands within the town boundaries. The act of 1818, in transferring the title to other trustees, made no reservation of the beach, or shore of the ocean, and that no such reservation, or any exception, was intended in the general grant is rather made clear, than doubtful, by the particular reservations contained in the provisos of the act.

I cannot do better than quote from the language of Mr. Justice WILLIAMS, at the Appellate Division, upon this point. " We find in the act no intent to except the beach or seashore from the undivided lands which the trustees of the proprietors were given the power to sell.   *   *   *   The language of the act is general ' all undivided lands.'. The beach, or shore, was land, and it was undivided. There is no express exception or reservation of any lands which remain undivided. The *first* proviso, so far as lands are concerned, only relates to the *use* of the beach or shore, by taking seaweed from it, and carting or transporting to and from or landing property on such shore. This proviso makes no reference to the management or regulation of the lands, constituting the beach or shore, by either class of trustees, but merely provides for the management and regulation of the waters, fisheries, and taking of seaweed and the production of the waters. It then provides that the right given to the new trustees shall not in any manner debar the inhabitants of the town from the privilege of taking seaweed from the shores of the common lands as they had been accustomed to do. The phrase ' common lands of the town,' used in this proviso in reference to the taking of seaweed from the shore thereof, evidently was used to designate lands held in common by the proprietors, and not in any

technical sense as indicating that the shores or lands were public property. \* \* \* It is quite clear, as disclosed by the case, that the terms ' undivided lands ' and ' common lands ' were used interchangeably to refer to the uplands and to the beaches as well."

I consider these views to be correct, and I fail to find anything in the evidence which supports a contrary view, that there were common lands of the town other than what were held as such in trust by the trustees for the proprietors. The plaintiff's evidence is consistent with privileges and an easement enjoyed by the public, in connection with a title and the possession in the trustees and it is wholly insufficient, in my opinion, to inject any doubt into the meaning, or effect, of the act of 1818. The act itself made a reservation with respect to public easements and privileges, and that reservation was recognized in the deed to the defendant's predecessor in title.

But the plaintiff needed more than the possession of a right to an easement, or to the shore privileges testified to, in order to maintain an action in ejectment; it needed the fee and the right to the possession of the property. Whether the plaintiff had any title to the premises described in the complaint, in my opinion, depended upon a construction of the act of 1818 and that construction was given to it below, which its plain language warranted.

The various questions, which are important to this plaintiff, have been so fully discussed in the *Mecox Bay Oyster Company's* case, and below, in the opinions delivered at the Appellate Division and by the trial judge, that further discussion now is unnecessary.

I think that the plaintiff failed to make out any claim to the possession of the premises and that the trial court committed no error in directing a verdict for the defendant.

The judgment appealed from should be affirmed, with costs.

O'BRIEN, HAIGHT, LANDON and WERNER, JJ., concur; and MARTIN, J., concurs in result; PARKER, Ch. J., not sitting.

Judgment affirmed.