PEOPLE ex rel. SQUIRES et al. v. HAND et al.

(Supreme Court, Trial Term, Suffolk County.   May 15, 1912.)

1. STATUTES (§ 120*)—TITLE—SUFFICIENCY.
    Laws 1902, c. 133, entitled "An act to provide for the election and to prescribe the compensation of town trustees of Southampton, and legalizing payment of compensation to the present and former trustees," was not invalid because the title did not indicate that the number of the trustees was reduced to five, since the Constitution requires only that the title express the subject of the act so as to indicate the matter with which it deals.
    [Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 168–172; Dec. Dig. § 120.*]

2. TOWNS (§ 26*)—TRUSTEES—STATUTES—APPLICATION.
    Laws 1902, c. 133, provided for the election in the town of Suffolk in April, 1903, and biennially thereafter, as successors to "the present board of trustees" of five trustees for the term of two years.   Section 2 provided for their compensation, and section 3 legalized payment of compensation by the town to present and former trustees for services rendered by them. Held, that such act applied to the town trustees, and not to the proprietor trustees created by Laws 1818, c. 155, which was a separate body on whom was conferred the title to the common lands of the town, etc., who were not elected by the people, and who had no public functions.
    [Ed. Note.—For other cases, see Towns, Cent. Dig. §§ 37–41; Dec. Dig. § 26.*]

3. CONSTITUTIONAL LAW (§ 127*)—COLONIAL CHARTER—CONTRACT—IMPAIRMENT.
    A colonial charter granting land, riparian rights, and franchises to trustees of a town ratified and confirmed by legislative action is a contract the obligation of which the state cannot impair.
    [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 325–341; Dec. Dig. § 127.*]

4. CONSTITUTIONAL LAW (§ 127*)—CONTRACTS—COLONIAL GRANTS.
    A colonial charter granted to trustees of the town of Southampton, though granting lands and water rights which the state could not thereafter impair, did not constitute a surrender of legislative control over the town officials or erect independent governmental agencies that should forever be beyond the reach of the Legislature, and hence Laws 1902, c.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes·

133, reducing the number of trustees, providing for their compensation, and election by the public, was not invalid as impairing the obligation of the contract evidenced by such colonial grant.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 325–341; Dec. Dig. § 127.*]

Quo warranto by the People, on the relation of George D. Squires and others, against Alonzo P. Hand and others. Judgment for defendants.

Charles M. Stafford, for plaintiffs.

T. M. Griffing (Thos. Young, of counsel), for defendants.

PUTNAM, J. This is a quo warranto proceeding to determine which of two rival boards are the lawful trustees of the freeholders and commonalty of the town of Southampton. Relators sue as successors of the board of twelve trustees, named in the colonial charters, having been elected at an April town meeting, as provided by these charters under a procedure continued for over two centuries.

Defendants, known as the five board, claim to have been elected as successors to the "present board of trustees" for a two-year term at the biennial town meeting held in various election districts under the act of 1892. This act is claimed by the relators to be unconstitutional: (1) Being a local act, it is objected that it embraces more than one subject, and that the subject is not expressed in the title; also (2) that it is void for uncertainty; further (3) that it impairs the obligations of the grants in the charter in violation of the federal Constitution. The grants were in the charter by Gov. Andross in 1676 confirmed and followed by the grant in the Dongan Charter of 1686. By the Andross Charter the legal title to the common lands vested in the trustees, which the Dongan Charter confirmed. Trustees v. Betts, 163 N. Y. 457, 57 N. E. 762. These colonial charters were ratified by the Colonial Assembly on May 6, 1691 (1 N. Y. Col. Laws, p. 224), and by successive state Constitutions. Authority has been exercised by these trustees over common lands, riparian rights, and town franchises. The Legislature by Acts in 1818 (chapter 155) and in 1831 (chapter 283) have recognized these colonial trustees. Meanwhile the growth of population in Southampton made it difficult for the voters from such extensive territory to assemble in one place for an election. General state laws recognized biennial elections (Laws of 1890, c. 569), and also permitted the separation of the town voters into one or more election districts (Town Law [Consol. Laws 1909, c. 62] § 65). In 1902 a reorganization statute was passed. The full act is as follows:

"An act to provide for the election and to prescribe the terms and compensation of the town trustees of the town of Southampton in the county of Suffolk, and legalizing payment of compensation to the present and former trustees.

"The people of the state of New York, represented in Senate and Assembly, do enact as follows:

"Section 1. There shall be elected in the town of Southampton, county of Suffolk, at the town meeting to be held in such town in April, 1903, and bi-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ennially thereafter, as successors to the present board of trustees, five trustees, for a term of two years each.

"Sec. 2. Each of said trustees shall be entitled to receive the same compensation as other town officers for each day he shall be actually and necessarily employed in the discharge of the duties of his office.

"Sec. 3. The payment of compensation by said town, at the above rate, to the present and former trustees of said town for services actually and necessarily rendered by them in the performance of the duties of their office is hereby legalized.

"Sec. 4. This act shall take effect immediately." Chapter 133, Laws 1902.

[1] 1. It is urged that, because the title of this act does not indicate that the number of trustees had been reduced to five, the statute must be held void. The purpose of the Legislature was clear. It was to reorganize the board and to fix their pay, as well as extend the term of office. An act, providing for election, terms, and compensation of town trustees necessarily must deal with the persons (and their number) who are to be so elected. The Constitution requires that the title shall express the subject of the act, so as to indicate the matter with which it deals, but not necessarily all that the act proposes to do. People v. Lawrence, 36 Barb. 177; Id., 41 N. Y. 137.

The provision that the new trustees shall be five comes in the first section. It does not break the unity of the statute. The intent of this inhibition is that the title may apprise the public of the subject of the legislation. If anything has been surreptitiously inserted, or it contains an incongruity such as to mislead, the prohibition applies. Such was the so-called Albany penitentiary amendment. It was annulled because Cullen, J., found that its title tended to avert public attention from the real subject. People ex rel. Corscadden v. Howe, 177 N. Y. 499, 504, 69 N. E. 1114, 66 L. R. A. 684. It did not hint that in that act lurked a power to turn over the penitentiary to the sheriff, and even to discontinue it, and to dispose of the land. On the other hand, the title of this act does not mislead. The number of the trustees to be elected, not only had a natural connection with the subject expressed, but was necessary and essential to such a provision, and therefore was not within this prohibition. Ensign v. Barse, 107 N. Y. 329, 14 N. E. 400, 15 N. E. 401. The later tendency is to construe this provision liberally, rather than to embarrass fair and legitimate legislation by overstrictness. Cooley, Const. Limitations (7th Ed.) 209; People v. Coler, 173 N. Y. 103, 65 N. E. 956.

[2] 2. After a special town meeting of February 17, 1818, in which it was voted that there should be some alteration respecting the privileges of the town, the Legislature on April 15, 1818 (chapter 155, Laws of 1818), created a new and separate body of trustees— that of the so-called proprietors of lands in common—and conferred upon them the title to the uplands. In the year 1831 a further statute was enacted, declaring that the trustees of the town should have the sole control and management of the fisheries, seaweed, waters, and productions of the waters of the town, granted by the Dongan Charter, except so far as they had been changed and altered by the

act of 1818. The proprietor trustees created by the act of 1818 were trustees of private lands, and were not elected by the people, and had no public functions. That the law of 1902 applied to the town trustees cannot be doubted. Lane v. Tilton, 43 Misc. Rep. 214, 88 N. Y. Supp. 428. Although there had been a board of proprietor trustees, they were not town trustees, and therefore the act fixing the election "of successors to the present board of trustees" pointed clearly to the board that had always been elected by popular vote. Hence this act is not void for uncertainty.

3. The relators urge that the act offends the federal Constitution, as impairing the obligation of a contract. Dartmouth College v. Woodward, 4 Wheat. 518, 4 L. Ed. 629. They assert that these charters to Southampton conveyed rights that, once given, could not afterwards be modified. It is said that nearly all the Long Island towns were created by royal charters, or by patents creating corporate bodies, giving the inhabitants more or less power of self-government. Thus in the same year 1686 Gov. Dongan granted confirmatory charters to New York City April 27th, to Breuklen May 13th, and same day to New Utrecht, to Jamaica May 17th, to Gravesend September 10th, to Newtowne November 25th, to Southampton December 6th, and to Brookhaven December 27th.

[3] It is undeniable that these grants established contracts, the obligations of which the state cannot impair. Town of Brookhaven v. Smith, 188 N. Y. 74, 77, 80 N. E. 665, 9 L. R. A. (N. S.) 326, 11 Ann. Cas. 1. These royal charters combined two objects. The towns received a measure of local self-government through agencies and officials named and appointed. But there were also ceded title to the unappropriated lands, also rights in the waters, as well as a relinquishment of the crown rights in the foreshore. Clearly the obligations protected by the Dartmouth College Case are those respecting these lands and estates, since the state, as the successor to the crown, cannot retake the lands and waters ceded. "A grant," said Marshall, C. J., "in its own nature amounts to an extinguishment of the right of the grantor, and implies a contract not to reassert that right." Fletcher v. Peck, 6 Cranch, 87, 137, 3 L. Ed. 162. The state therefore cannot assert any right to repossess these lands and waters, so as to impair the estate of the town therein.

[4] But this charter did not surrender control over the town officials or erect independent governmental agencies that should forever remain beyond the reach of the Legislature. Such a perpetual imperium in imperio would have been as repugnant to British colonial administration as its inequality and favoritism are opposed to our present political standards. All these charters have been the subject of legislative modification. No court has questioned this power to make such changes, as such grants are not private, but public and governmental. That in its radical modification of the powers of the Southampton trustees the Legislature responded to a popular demand in 1818 does not detract from its exercise of the right to interfere with these officials. It then took from the chartered town trustees

the greater part of their powers, which it conferred on the newly formed board of proprietors.

Huntington's Dongan patent had complete revision in 1873. The territory of Babylon was set off (chapter 105), and later (chapter 492) the charter trustees of Huntington were abolished, and new town officers substituted. Similar important modifications were enacted in respect to the trustees of Brookhaven. Chapter 73, Laws 1899. When this constitutional objection was urged as to New York City, it was held that the Dongan Charter was governmental, and not private, and therefore was subject to full power of amendment. Demarest v. Mayor, 74 N. Y. 161. The fact that these trustees at one time had title to the common lands, and have also title to the lands under water, and are vested with riparian rights, does not make them the less public. Such title is held in trust for all the inhabitants as a public and governmental agency. The Legislature can therefore change the number of such trustees, and can make their term of office biennial, to conform to the elections of other town officials. The Dartmouth College Case applies to institutions that are private. It would be intolerable to impose such a prohibition upon a municipal charter, however perfect it may be. Covington v. Kentucky, 173 U. S. 231, 241, 19 Sup. Ct. 383, 43 L. Ed. 679. It is vain to seek to bind town governments to seventeenth century limitations. The principle of the Dartmouth College Case is not to be extended. It would cripple the state in the effective control of its citizens and in advanced measures for their welfare. Least of all should it be invoked to check the growth and development of towns which started under conditions now outgrown. Hence it is concluded that the act of 1902 was in proper form, and within the constitutional power of the Legislature. It follows that the defendants are the lawful trustees of the freeholders and commonalty of the town of Southampton, and that the relators are without lawful right to such office.

Judgment is directed accordingly.