**TRUSTEES OF the FREEHOLDERS & COMMONALTY OF the TOWN OF HUNTINGTON, on behalf of all the Freeholders & Commonalty of the Town of Huntington and on behalf of all those entitled to the full benefit, use and enjoyment of that unique regional natural resource, the Nassau-Suffolk Regional Ecological System without degradation from the actions of the Environmental Protection Agency of the United States or the County of Suffolk, their several agencies, departments, agents or employees, and on behalf of all those entitled to the highest and best use of the natural resources and environment of the Nassau-Suffolk Regional Ecological System without degradation resulting from the failure to adequately determine the highest and best use of the limited ground and surface water resources of the Nassau-Suffolk Regional Ecological System in accordance with modern methods of environmental systems science, and on behalf of all those entitled to protection of the natural resources and environment of the Nassau-Suffolk Regional Ecological System, in particular its limited ground and surface waters, and on behalf of all others who might be similarly situated, Plaintiffs,**

v.

**ENVIRONMENTAL PROTECTION AGENCY of the United States of America et al., Defendants.**

No. 72-C-71.

United States District Court, E. D. New York.

June 21, 1972.

Yannacone & Yannacone, by Victor J. Yannacone, Patchogue, N. Y., for plaintiff.

Robert A. Morse, U. S. Atty. Eastern District of New York, by George Weller, Asst. U. S. Atty., for defendant Environmental Protection Agency.

George W. Percy, Jr., County Atty., by William T. Lauder, Asst. County Atty., for defendant County of Suffolk.

Louis J. Lefkowitz, Atty. Gen. of State of New York, by Thomas F. Harrison, Asst. Atty. Gen., for intervenor-defendant State of New York.

ZAVATT, District Judge.

The motion of the defendant Environmental Protection Agency of the United States of America (E.P.A.) to dismiss the complaint is granted.

The plaintiffs, the unnamed, alleged Trustees of the Freeholders and Commonalty of the Town of Huntington (hereinafter the "Trustees of the Freeholders"), have instituted this suit for various forms of relief, including the restraint of the defendants from implementing a program for waste water treatment and disposal until such time as a trial-like hearing is held by the defendant E.P.A. to consider the impact of proposed sewage treatment programs upon "the Regional Ecological Systems affected by such programs."

The defendant, County of Suffolk, served and filed its answer on March 16 and 17, 1972, respectively. The defendant E.P.A. filed its notice of motion to dismiss the complaint upon several grounds, including the threshold ground that the plaintiffs do not legally exist. On January 31, 1972, the State of New York moved for leave to intervene as a party defendant. That motion was granted and an order for leave to so intervene, signed on January 31, 1972, was entered February 4, 1972. The motion to dismiss was heard on April 24, 1972 and granted, with prejudice and costs, upon the ground that the plaintiffs, Trustees of the Freeholders, have no standing to sue.

It is fundamental that a party bringing an action in a Federal court

must have "standing to sue." *See* Wright, Law of Federal Courts, § 13, at 39 (1970). This status is personal and does not exist where one seeks to assert the rights of another. See Tileston v. Ullman, 318 U.S. 44, 63 S.Ct. 493, 87 L. Ed. 603 (1943).

The lengthy complaint purports to establish the standing of the plaintiff to sue by purporting to trace the history of the "Trustees of the Freeholders" from "certain 17th Century Colonial Charters" to and including ". . . an act of the state legislature which divided the Town [Town of Huntington] into two distinct Townships [Huntington and Babylon]" in 1872. Reference in the complaint to this Act of 1872 must be intended as a reference to ch. 105 § 1 [1872] N.Y.Sess.Laws 248, passed March 13, 1872. The complaint omitted any reference to ch. 492, § 1, [1872] N. Y.Sess.Laws, passed May 3, 1872, which abolished the office now asserted to be held by the plaintiffs.[1]

In order to understand the present day status of the plaintiffs, "Trustees of the Freeholders," a brief synopsis of the history of the plaintiffs is essential. The origin of the "Trustees of the Freeholders" is found in certain royal patents granted between the years 1666 and 1694 to the inhabitants (freeholders and commonalty) of the Town of Huntington, who, during that period, were referred to as the "Freeholders and Inhabitants."

### *The Nicolls Patent*

The first of these patents, the Nicolls Patent, dated November 30, 1666, was a grant by James, Duke of York and Albany, to:

Jonas Wood,
William Severedge,
Robert Seely,
John Ketcham,
Thomas Scudamore,
Isaach Platt,
Thomas Joanes and
Thomas Weeks

in the behalfe of themselves and their Afsociates the ffreeholders and Inhabitants of the sd Towne [of Huntington] their Heires, Succefsors and Afsignes."

This patent ratified, confirmed and granted

"all yᵉ Lands that already have beene or hereafter shall bee *Purchased* for and on the behalfe of the said Towne of Huntington whether from the Natives Proprietors or others within the Limitts and Bounds herein exprest . . ."

It also confirmed and granted

"Unto the said Patentees and their Afsociates their Heirs Succefsors and Afsignes all the Privileges belonging to a Towne within this Government . . . They the said Patentees and their Afsociates their Heirs Succefsors and Affignes Rendering and Paying such Duties and Acknowledgmts as now are or hereafter shall bee Constituted and Established by the Lawes of this Colony under Obedience of his Royall Highnefse his Heires and Succeffors."[2]

This patent created all the territory, from Cold Spring to Nessaquake River and from the Sound on the North to the sea on the South, as the Town of Huntington. It gave no right to the Town to purchase other land, but confirmed

---

1. The attorneys for the plaintiffs have failed to serve and file a memorandum of law addressed to this question of standing to sue or to any other legal question involved in this case, despite the Court's numerous, persistent requests and demands therefor. They have also failed to serve and file any memoranda of law in reply to those of the defendants E.P.A.

and County of Suffolk and the intervenor-defendant State of New York, filed March 8th, 15th and 15th, respectively.

2. Nicolls Patent, Book No. 1 of Patents, at 73, 74, 75. Copies of the patent and other colonial patents are housed in the Office of the Secretary of State of the State of New York.

the title of the freeholders and other inhabitants of the Town to such land as had already been purchased or might be purchased thereafter, pursuant to a license from the colonial governors. It "conferred no official powers upon the persons named in the Patent. They were not mentioned as trustees, nor invested with authority to act in behalf of the Freeholders and Commonalty [non-land owning inhabitants] in the management or disposal of the Town property, but title was simply confirmed in them in behalf of the inhabitants." [3]

### The Dongan Patent

"In 1688, Thomas Dongan, then Governor of the Colony [of New York], required the inhabitants of the Town [of Huntington] to make purchases from the Indians of other territories, and summoned them to appear and show cause by what title they held their lands, in order, as is alleged, that they might be compelled to take out a new Patent. Difficulties arose between him and the Town concerning the payment of the quitrents, and in that year he seized their Patent of 1666, and made them pay his full demands for quit-rents, and issued to them a new Patent." [4]

The Dongan Patent, dated the second day of August 1688, established for the first time a number of public officers of the Town of Huntington designated as "The Trustees of the Freeholders and Commonalty of the Town of Huntington." The first such officers were appointed by Governor Dongan and named

as such in the Patent of 1688. They were granted full authority over all the property of the Town. Thereafter, nine Trustees, one Clerk, one Constable and two Assessors were to be chosen annually by a majority of the people of the Town at a Town meeting assembled on the first Tuesday of May. The Patent provided for the assessment and payment of a yearly rate, or tax, to defray the expenses of the Town Government and authorized the Trustees to levy sufficient taxes for that purpose. [5]

The grant under the Dongan Patent ran to

".  .  . ye said Inhabitants & freeholders ye freemen of Huntingtonn affores [d] Comonly Called by y [e] name of y [e] freeholders & Inhabitants of ye Towne of Huntingtonn or by whatsoever Name or Names they are Called or named *& their Heirs* & Succefsors forever hence forward are & *shall* be *one Body Corporate & Politique in Deed &* Name  .  .  ." [6] (emphasis added)

Although the Dongan Patent required the annual election of Trustees, it does not appear that any Trustees were elected by the people until April 9, 1694. During this six year period, those who had been appointed as Trustees by Governor Dongan by the Dongan Patent continued to act as Trustees. [7]

### The Fletcher Grant

Before the third and final patent was granted (the Fletcher Grant, dated the 5th day of October, 1694 and signed by

3. Street & Platt, An Opinion Upon the Powers and Duties of the Trustees of the Freeholders and Commonalty of the Town of Huntington  .  .  ., at 13–17 (1872). This work, authored by Charles Street, Esq., and Henry Platt, Esq., then prominent attorneys of the Town of Huntington, was undertaken at the request of the "Trustees of the Freeholders" in May of 1871. Originally, 100 copies were printed. Today, one can secure a typed copy of the original from the Office of the Town Historian of the Town of Huntington.

4. Street & Platt, *supra* note 3, at 16–17; Dongan Patent, Book No. 6 of Patents, at 338.

5. Street & Platt, *supra* note 3, at 17–18; Dongan Patent, Book No. 6 of Patents, at 346, 347.

6. Dongan Patent, Book No. 6 of Patents at 343.

7. 2 C. Street, Huntington Town Records, including Babylon, at 134 (1888).

Ben Fletcher, the then Governor of the Province of New York), a Town meeting was held on April 9, 1694 at which the following persons "ware Chosen for trustees for managing of all town afaires . . .":

John wood
John wickes
Cap. wickes
Thomas Brush
Jonas wood
Cap. Bailey
John Adams [8]

The seven Trustees, so elected, were named in the Fletcher Grant of October 5, 1694 because they, "our Loveing Subjects . . . in behalf of themselves and the Rest of our Loveing subjects the freeholders & Inhabitants of our Sayd Town of Huntingtone Have by Petition Presented unto Benjamin ffletcher our Captain Generall & Governour in Chief of our sayd Province of New York . . . Prayed our Grant and Confirmation of the Premifses . . . ." [9]

The Fletcher Grant was similar to that in the Dongan Patent, in that it created one body politic for the Town and ran to the "ffreeholders & Inhabitants . . . by whatsoever name or names they are called or named and their Heirs and Succefsors." [10]

This grant, however, differed from the Nicolls and Dongan Patents in one important respect. It empowered the Trustees, in behalf of the Town, to acquire additional lands without a prior license issued by the Governor. It reaffirmed the Nicholls Patent of 1666 because it appeared, in 1690, that the Nicolls Patent could not be found and the

people of the Town, apprehending that their titles and rights might suffer thereby, petitioned Governor Fletcher to confirm their rights under the Nicolls Patent.[11]

The Fletcher Grant reaffirmed the "Body Politick" status of the named Trustees, "ffreeholders & Inhabitants of our sayd Town of Huntington hereby Erected and made one Body Politick and Corporate and willed and Determined to be called by the Name of the Trustees of the freeholders & Commonalty of our sayd Towne of Huntington & their Succefsors . . ." and provided that "the Trustees of the freeholders & Commonalty of the Town of Huntington aforesayd and the Town Clerke of the Sayd Town be Yearly Elected and Chosen on the first Tuesday of May forever (that is to say) Seven trustees . . . one Town Clerk one Constable and two Afsefsors in such Publick Place as the Trustees for the time being shall Appoint and direct and that the Trustees Constables Town Clerk and Afsefsors be Chosen by the Majority of Votes of the freeholders and freemen of our sayd Town of Huntington" and empowered them to "Levy and Impose such Summe or Summes of Mony as they shall think fitt for the Defraying the Necefsary and Publick Charge of our sayd Town . . ." [12]

These last two colonial grants, in effect, gave dual powers to the said "Trustees of the Freeholders." On the one hand, they established them as the representative governing body of the Town of Huntington. In addition, they vested in these representatives a proprietary interest in all town land of the Town of Huntington, as the Trustees for

---

8. 2 C. Street, *supra* note 7, at 135 and n.

9. Fletcher Grant, Book No. 6 of Patents, at 494; *see also* Street & Platt, *supra* note 3, at 21–22.

10. Fletcher Grant, Book No. 6 of Patents, at 497.

11. Street & Platt, *supra* note 3, at 20–21. This would appear to explain the reference to the Nicolls Patent in the initial paragraph of the Fletcher Grant.

12. Fletcher Grant, Book No. 6 of Patents, at 495, 511–12.

the Freeholders and their Inhabitants of the Town.[13]

*Status of Trustees of the Freeholders & Commonalty After the American Revolution*

The status of the "Trustees of the Freeholders" remained unchanged, basically, from 1694, the date of the Fletcher Grant, until the first New York State Constitution was adopted April 20, 1777. Article XXXV thereof continued the Common Law of England, the Statute Law of England and Great Britain and the Acts of the Legislature of the Colony of New York (which formed the law of the Colony on April 19, 1775) "subject to such alterations and provisions as the legislature of this state shall, from time to time, make concerning the same." [14]

Article XXXVI of the first New York Constitution rendered null and void all grants of land within New York State made by the King of Great Britain, or persons acting under his authority, after October 14, 1775. It provided, however, that nothing in the Constitution of 1777 should be construed to affect any such grants or annul any charters to bodies politic so made prior to October 14, 1775. It provided, further,

"That all such of the officers in the said charters respectively [made prior to October 14, 1775] *as, by the terms of the said charters, were to be appointed by the governor of the colony of New York,* with or without the advice and consent of the council of the King, in the said colony, shall henceforth be appointed by the council established by this constitution for the appointment of officers in this state, until otherwise directed by the legislature." (Emphasis added.)[15]

13. Street & Platt, *supra* note 3, at 21–31. For a brief history of the "Freeholders of Long Island," see Lowndes v. Board of Trustees of the Town of Huntington, 153 U.S. 1, 14 S.Ct. 758, 38 L.Ed. 615 (1894); Knapp v. Fasbender, 1 N.Y.2d 212, 151 N.Y.S.2d 668, 134 N.E.2d 482 (1952).

14. "XXXV. [Common law continued.] —And this convention doth further, in the name and by the authority of the good people of this state, ORDAIN, DETERMINE, AND DECLARE That such parts of the common law of England, and of the statute law of England and Great Britain, and of the acts of the legislature of the colony of New York, as together did form the law of the said colony on the 19th day of April, in the year of our Lord one thousand seven hundred and seventy-five, shall be and continue the law of this state, subject to such alterations and provisions as the legislature of this state shall, from time to time, make concerning the same. That such of the said acts as are temporary shall expire at the times limited for their duration respectively. That all such parts of the said common law, and all such of the said statutes and acts aforesaid, or parts thereof, as may be construed to establish or maintain any particular denomination of Christians or their ministers, or

concern the allegiance heretofore yielded to, and the supremacy, sovereignty, government, or prerogatives claimed or exercised by, the King of Great Britain and his predecessors, over the colony of New York and its inhabitants, or are repugnant to this Constitution, be and they hereby are, abrogated and rejected. And this convention doth further ORDAIN, That the resolves or resolutions of the congresses of the colony of New York, and of the convention of the state of New York, now in force, and not repugnant to the government established by this Constitution, shall be considered as making part of the laws of this state; subject, nevertheless, to such alterations and provisions as the legislature of this state may, from time to time, make concerning the same." (additional cites omitted) 1 C. Z. Lincoln, Constitutional History of New York, 183–184 (1906).

The original text of the New York Constitution of 1777 is contained in 1 Laws of New York, at 13 (Greenleaf 1798). *See also* The Constitutions of the Sixteen States, at 134 (printed by Manning & Loring, Boston, Mass.) (1797).

15. 1 C. Z. Lincoln, *supra* note 14, at 184–85. These two articles of the first New York State Constitution were continued in substance in the State Constitutions of 1821 (Article 7, §§ 13, 14); 1846

It is to be noted that the officers who were to constitute the body politic of the Town of Huntington, during the colonial period, were to be and, in fact, were appointed by the Governor under the Nicolls Patent of 1666. Under the Dongan Patent of 1688 and the Fletcher Grant of 1694, the officers of that body politic were to be, and were in fact, elected by the inhabitants of the Town of Huntington. It would appear that Article XXXVI of the 1777 Constitution of the State of New York was not applicable to members of the body politic of the Town of Huntington. Further, it is worthy of note that the Dongan Patent and the Fletcher Grant created one body politic of the Town and ran to the grantees, their heirs and successors forever.

In 1784, the "Trustees of the Freeholders" petitioned the New York State Legislature "in behalf of themselves and the faid freeholders" for leave to hold the annual town meetings of the Town of Huntington on the first Tuesday in April of each year and on no other day instead of on the first Tuesday in May (the date mandated in the Fletcher Grant). This petition was granted, from which one may infer that the "Trustees of the Freeholders" were thereby recognized by the New York State Legislature as the representative body (body politic) of the Town of Huntington and the freeholders and inhabitants of that town were authorized to elect, at the annual town meeting, the "Trustees of the Freeholders," a supervisor, a town-clerk, assessors, constables, overseers of the poor, overseers of the highways and fence viewers.[16]

On March 13, 1872, the New York State Legislature, by Chapter 105, Section 1 [1872], N.Y.Sess.Laws 248, divided the Town of Huntington into two townships, namely, those of Huntington and Babylon.[17]

Shortly thereafter, and on May 3, 1872 (more than 100 years ago), the New York State Legislature abolished the office of "Trustees of the Freeholders" and created the Supervisor, Town Clerk and Assessors of the Town of Huntington "ex officio the board of Trustees of the town of Huntington, and legal successors of the trustees of the freeholders and commonalty of the town of Huntington . . ."

### Chap. 492

AN ACT to abolish the office of the Trustees of the freeholders and commonalty of the town of Huntington, county of Suffolk, and to create their successors.

Passed May 3, 1872; three-fifths being present.

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

Section 1. On and after the first Tuesday in April, in the year one thousand eight hundred and seventy-two, the office of trustees of the freeholders and commonalty of the town of Huntington, in the town of Hun-

---

(Article 1, §§ 17, 18); 1894 (Article 1, §§ 16, 17).

For an in depth analysis of the various Constitutions of the State of New York from 1777 to and including 1894, *see* C. Z. Lincoln, *supra* note 14. (1906) (6 volumes).

16. Ch. VIII, [1784] N.Y.Sess.Laws, recorded in Vol. 1, Laws of New York, at 67 (Greenleaf, 1792).

It is interesting to note that, at the eleventh session of the New York State Legislature (held in Poughkeepsie during the administration of Governor George Clinton), a law was enacted dividing New York State into Towns and authorizing all qualified freeholders and inhabitants of each town to vote at the annual meeting to be held on the first Tuesday in April in every year. *See* Ch. LXIV, § VII, [1788] N.Y.Sess.Laws, recorded in Vol. 2, Laws of New York, at 166–67 (Greenleaf 1792).

17. This, obviously, is the Act of 1872 referred to, but not cited, by the plaintiffs in the complaint.

tington, in the County of Suffolk, shall be abolished and cease to exist.

§ 2. The supervisor, town clerk and assessors of the town of Huntington, and their successors, are hereby created ex-officio the board of trustees of the town of Huntington, and legal successors of the trustees of the freeholders and commonalty of the town of Huntington, and vested with all the rights, privileges, powers, duties and jurisdiction heretofore enjoyed and exercised by such trustees, over the real and personal property of the town of Huntington. The supervisor of the town shall be ex-officio president of the board of trustees of the town of Huntington hereby created.

§ 3. The president of the trustees of the freeholders and commonalty of the town of Huntington, shall, upon demand, deliver to the president of the board of trustees of the town of Huntington, hereby created, and after the date aforesaid, all records, books, papers, documents, moneys and property belonging to said town, and then in his possession or under his control.

§ 4. All acts inconsistent with this act are hereby repealed."

Chapter 492, [1872] N.Y.Sess.Laws 1159. *See also* 3 C. Street, *supra* note 7, at 662.

18. *See* 3 C. Street, *supra* note 7, at 249 (election of 1810), at 384 (election of 1843), at 394 (election of 1846), at 602 (election of 1871). *See also supra* note 16.

19. 3 C. Street, *supra* note 7, at 622.

20. "[1872, July 15.]
     At a meeting held this day at the Supervisor's office, the Supervisor, Assessors and Town Clerk made a formal demand of the books, papers and all property belonging to the Town of Huntington, in possession of, or subject to the order of the late Trustees of the Town of Huntington, the same to be delivered over by them to their successors in office, as duly appointed by Chapter 492 of the Session Laws of the State of New York, passed May 3d, 1872.

Prior to this enactment, the Town officers of the Town (including the Supervisor, the Town Clerk, the Assessors and the Trustees of the Freeholders) were elected on the first Tuesday of April of each year, to serve for one year.[18] The seven persons elected as "Trustees of the Freeholders" on April 2, 1872 (before the legislative enactment of May 3, 1872) were:

William W. Wood
Warren B. Sammis
Buel Titus
William H. Sammis
J. Matthias
Henry Buffett
Isaac C. Ireland [19]

It would appear that there have been no elections of "Trustees of the Freeholders" since the annual election of April 2, 1872.

At a meeting held at the Supervisor's office on July 15, 1872, the Supervisor, Assessors and Town Clerk, who now were the ex-officio Board of Trustees of the Town (by virtue of Chapter 492, Laws of 1872), made a formal demand upon the late "Trustees of the Freeholders" to turn over, on or before July 20, 1872, "all books, papers, documents, moneys or any and all property that may be in your possession, or subject to your order, that may belong [sic] or owned by said Town of Huntington." [20]

On demand being made, the President of the Board agreed to deliver over at the first opportunity, to the said new Board, the documents etc., as demanded.
[Copy of Demand.]
To WM. W. WOOD, President, WARREN B. SAMMIS, BUEL TITUS, WM. H. SAMMIS, J. MATTHIAS, HENRY BUFFETT, ISAAC C. IRELAND, Trustees of the Town of Huntington, elected April 2, 1872.
GENTLEMEN: By virtue of Chapter 492 of the Laws of the State of New York, entitled 'an Act to abolish the office of Trustees of the freeholders and commonalty of the Town of Huntington, in the Town of Huntington, County of Suffolk, and to create their successors,' we the undersigned, after due consultation with eminent counsel, consider it

The ex-officio Board of Trustees of the Town of Huntington, created by the act of May 3, 1872, should not be confused with the Town Board of the Town of Huntington, which was created in 1909 by Chapter 63, Section 131 (1909) N.Y.Sess.Laws. By virtue of this enactment, the Town Board became the general governing body of the Town. The ex-officio Board of Trustees of the Town (created by the act of May 3, 1872) was left only with the authority to protect the Town's proprietary interests in the public lands of the Town.[21]

By Chapter 279, Section 1, [1888] N. Y. Sess. Laws 494–95, the State of New York ceded to the Trustees [Board of] of the Town of Huntington, and their successors in office for the purpose of oyster cultivation, all the right, title and interest of the State of New York in and to the lands outside of and below the low water mark under the waters of Huntington Bay in the Town of Huntington, subject to the rights and powers of the Commissioners of the Land Office to grant all the right, title and interest of New York State to lands under water in that Bay to the owners of adjacent uplands and subject to riparian rights of owners of property and subject to the rights of those persons who then had oysters planted on the said lands under water in that Bay.

This enactment of the New York State Legislature led to the litigation in Lowndes v. Board of Trustees of the Town of Huntington, *supra* note 21. It is worthy of note that in this litigation (over the claimed right of Lowndes to farm an oyster field located in Huntington Bay), the action to eject him was brought, not by "Trustees of the Freeholders" but, rather, by the Board of Trustees of the Town of Huntington. In the Circuit Court for the Eastern District of New York, the Court held that "the plaintiffs were the successors of the trustees named in said patents [Nicolls Patent of November 30, 1666, the Dongan Patent of August 2, 1688 and the Fletcher Patent of October 5, 1694]. Laws N.L.1872 c. 492", Lowndes, *supra* 40 F. 625, 626 (1889). The Court directed a verdict in favor of the Board of Trustees of the Town of Huntington. The judgment of the Circuit Court was affirmed. Lowndes v. Board of Trustees of the Town of Huntington, *supra* note 21.

In 1952, the New York State Legislature ratified and affirmed in the Board of Trustees of the Town of Huntington, successors to the Trustees of the Freeholders and Commonalty of the Town of Huntington, title to all lands described in the Nicolls Patent, the Dongan Patent and the Fletcher Grant and ratified and

our duty, as successors created under that Act, and we do hereby make a formal demand of you the former Trustees, of all books, papers, documents, moneys or any and all property that may be in your possession, or subject to your order, that may belong [sic] or owned by said Town of Huntington, and that the same shall be delivered and put in our possession, as being the proper custodians thereof, on or before the 20th day of July, 1872.

In witness whereof we have hereunto set our hands and signatures this fifteenth day of July, 1872.

J. AMHERST WOODHULL,
Supervisor.
DANIEL L. BAYLIS,
Town Clerk.
O. SMITH SAMMIS,
SELAH SMITH,
Assessors

Recorded by Daniel L. Baylis,
Town Clerk."
3 C. Street, *supra* note 7, at 622–23.

21. *See* Chapter 279, § 1, [1888] N.Y.Sess. Laws 494–95; Chapter 816, § 1, [1952] N.Y.Sess.Laws, 1777; Board of Trustees of Town of Huntington v. Lowndes, 40 F. 625 (Cir. E.D.N.Y.) aff'd, 153 U.S. 1, 14 S.Ct. 758, 38 L.Ed. 615 (1894); Knapp v. Fasbender, 1 N.Y.2d 212, 151 N.Y.S.2d 668, 134 N.E.2d 482 (1952); Sammis v. Town of Huntington, 186 App. Div. 463, 174 N.Y.S. 610 (2d Department 1919); People ex rel. Squires v. Hand, 158 App.Div. 510, 135 N.Y.S. 192, aff'd, 143 N.Y.S. 1138 (2d Department 1912).

confirmed in said Board of Trustees the powers to acquire, hold, manage, lease, control, convey, grant and dispose of property, both real and personal, for the benefit of the residents and taxpayers of the Town of Huntington heretofore exercised by the said Board of Trustees and authorized the said Board of Trustees to continue to hold, manage, lease, convey, grant, invest, and reinvest such property and funds as Trustee for the residents and taxpayers of the Town of Huntington. Ch. 816, § 1, [1952] N.Y. Sess.Laws 1777.

■ It is clear from the history of the "Trustees of the Freeholders" that they are a non-existent body with non-existent members and that, therefore, the plaintiffs (Trustees of the Freeholders and Commonalty of the Town of Huntington) lack standing to institute this action.[22]

At no time during the stages of this action have the alleged "Trustees of the Freeholders" been identified, except in the verification of the complaint in which one Jerome A. Ambro swore before a notary (one of the attorneys for the plaintiffs) on January 16, 1972 that "he is the President of the Trustees of the Freeholders & Commonalty of the Town of Huntington."

The motion of the defendant E.P.A. to dismiss the complaint is granted with prejudice and with costs against Jerome A. Ambro, upon the ground that the alleged plaintiffs lack standing and capacity to institute this action.

This is an order.

22. In 1962, the New York State Legislature enacted Chapter 865 of the Laws of 1962 which eliminated as members of the Board of Trustees any person who is not a member of the Town Board and constituted the members of the Town Board members ex officio of the Board of Trustees, thus merging the membership of the Board of Trustees of the Town of Huntington with the membership of the Town Board, the Town Supervisor to serve as ex officio President of the Board of Trustees. The effect of this statute is not before the Court, since neither the Town Board of the Town of Huntington nor the Board of Trustees of the Town of Huntington is a party to this action.