OPINION OF THE COURT
William L. Underwood, Jr., J.
Unfortunately, the State of New York and the Town of Southampton could not resolve their differences concerning fishing in the town’s freshwaters and this lawsuit was commenced. The State of New York and its environmental commissioner (hereinafter collectively referred to as State) brought this declaratory judgment action pursuant to ECL articles 11 and 13 to have certain rules and regulations enacted by the Town of Southampton allowing, only residents of the town to fish in its freshwaters declared null and void.
The State now moves for partial summary judgment upon “the grounds regarding pre-emption by the plaintiffs of fishing in the town”.
BACKGROUND
Defendant is a municipal corporation created by the Dongan Patent of 1686 and acts as the local form of government for the Town of Southampton. The Dongan *318 Patent granted to defendant title to the land and various franchises in the town, including that of fishing. Due to disagreements between the local proprietors and defendant, special legislation was enacted in 1818 which transferred some of the authority previously held by defendant to a new group of trustees denominated “Proprietors’ Trustees”. These trustees were to have no public functions but were to have control over all of the property in the town held in a proprietary capacity. There still was disagreement over the authority held by each group of trustees, and, as a consequence, special legislation was again enacted by the State Legislature in 1831. Defendant was given control over the fisheries subject to alteration by the State Legislature.
In 1868, the State of New York created the Fisheries Commission. Recommendations from the commission led to the enactment in 1895 of a game law which placed the regulation of freshwater fish with the State. All previous laws and ordinances passed by localities were repealed.
In 1925, the first State fishing license was adopted. This program was enacted as an adjunct to the State fish stocking program as a means of generating revenue specifically earmarked for that program. This program has been continued to the present as part of the Fish and Wildlife Law in ECL articles 9 and 11. From 1908 to 1975 stocking of various freshwater bodies in the Town of Southampton were performed by the Department of Environmental Conservation or its predecessor, the Conservation Department.
Pursuant to a resolution adopted by defendant on October 19, 1949, all of the rules and regulations deemed necessary for the proper discharge of its powers and duties were made available in printed form for the first time. Under the heading of “Non-Residents” it was resolved that “Anything herein contained to the contrary notwithstanding, none of the provisions of this Resolution shall be deemed to prevent any person from angling for fish other than for commercial purposes”. This regulation was reenacted on September 4, 1968.
Crucial to this motion is the fact that on May 2,1977 (eff May 23, 1977) defendant enacted a new set of rules and regulations for the management and products of the waters *319 of the town. One of the regulations limited freshwater fishing to residents and student residents of the town. Other regulations enacted conflict with the New York Environmental Conservation Law regarding the method or manner of taking fish. (Cf. 6 NYCRR Part 10, and Rules & Regulations of Town of Southampton, art III.)
The relevant provisions, of the New York Constitution, Dongan Patent of 1686 and statutes.
A. New York State Constitution
Section 14 of article I of the New York State Constitution, which the State contends recognizes the authority of the Legislature to amend colonial patents, provides: “Such parts of the common law, and of the acts of the legislature of the colony of New York, as together did form the law of the said colony, on the nineteenth day of April, one thousand seven hundred seventy-five, and the resolutions of the congress of the said colony, and of the convention of the State of New York, in force on the twentieth day of April, one thousand seven hundred seventy-seven, which have not since expired, or been repealed or altered; and such acts of the legislature of this state as are now in force, shall be and continue the law of this state, subject to such alterations as the legislature shall make concerning the same. But all such parts of the common law, and such of the said acts, or parts thereof, as are repugnant to this constitution, are hereby abrogated.”
B. The Dongan Patent of 1686
The Dongan Patent of 1686, which the State contends created the defendant as a municipal corporation, provides in pertinent part and in its original form of spelling and punctuation: “by these presents do grant Ratifye Release and Confirme unto Major John Howell Thomas Hallsey Senior Edward Howell John Jagger John Foster Francis Sayres Joseph * * * ffordham Henry Pearson Samuell Clerke Job Sayres William Barker Jsaac Halsey ffreeholders Jnhabitants of Southampton heerin after erected and made one body Corporate and Politique and willed and determined to be called by the name of the trustees of the ffreeholders and commonlty of the Towne of Southampton and their Successors all the afore recited tracts & necks of *320 land within the bounds and limitts aforesaid together with all and singular the houses messauges Tenements buildings millnes millnedames fencings Jnclosures gardens orchards fields pastures woods underwoods trees timber Common of pasture feedings meadowes marshes swamps plaines Rivers Rivolets Waters lakes ponds Brooks streames beaches Quarris mines mineralls Creeks harbours highway and Easements fishing hawking hunting and fowling (silver and gold mines Excepted) and all other franchizes profitts Comodityes and hereditaments whatsoever to the said tracts & neckes of land and premises”.
The State contends that the Dongan Patent of 1686, was not to be inconsistent with State law and it further provides: “make such acts and orders in writing for the more orderly Boeing of the premises, as they are the said Trustees of the ffreeholders and Comonalty of the towne of Southampton aforesaid and their Successors from time to time shall and may think convenient so allwayes as the said acts and orders be in no wayes repugnant to the laws of England and of this Province which now are or hereafter may be Established”.
C. Statutes
The State argues that chapter 155 of the Laws of 1818 took authority away from defendant and transferred this authority to another set of trustees who held the private land in the town, and it provides, in relevant part:
“I. * * * [I]t shall and may be lawful for the proprietors of the undivided lands and meadows, held by them as tenants in common, in the town of Southampton * * * to elect for the term of one year, or until others are chosen, not less than six nor more than twelve persons, being proprietors, trustees to manage all the undivided lands, meadows and mill streams, in said town of Southampton * * *
“II. And be it further enacted, That the said trustees shall have the same power to superintend and manage the undivided lands, meadows and mill streams aforesaid, as the trustees of the freeholders and commonalty of the town of Southampton now have”.
*321 The State asserts that chapter 283 of the Laws of 1831 confirmed the existence of defendant as a municipal corporation and retained the right of the State to abrogate defendant’s authority over freshwater fishing, and it provides in pertinent part:
“1. The Trustees of the freeholders and commonalty of the town of Southampton, in the county of Suffolk, are and shall continue to be a corporation, and they shall be elected as heretofore * * *
“5. The said trustees shall have the sole control over all the fisheries, fowling, seaweed, waters and the productions of the waters within the said town, not the property of individuals, and all the property, commodities, privileges and franchises granted to them by the charter of Governor Dongan in one thousand six hundred and eighty-six, except so far as are abrogated, changed and altered by the laws of this state, passed in conformity to the constitution and not now belonging to individuals nor to the proprietors, by virtue of an act entitled ‘An Act relative to the common and undivided lands and marshes in Southampton, in the county of Suffolk,’ passed April 15th, 1818”.
ECL 11-0105, which the State contends gives ownership of the fish to the State, provides in part: “The State of New York owns all fish, game, wildlife, shellfish, crustácea and protected insects in the state, except those legally acquired and held in private ownership” (see, also, NYS Const, art XIV, § 3; 23 NY Jur, Fish and Game, §§ 1, 3).
However, ECL 11-0703, which defendant contends prohibits nonresident license owners from fishing in the town’s freshwaters provides in pertinent part: “b. No license or stamp authorizes the holder (a) to trespass upon private lands or waters or to interfere with property belonging to another person”.
On the other hand, the State contends that ECL 11-2109 (subd 3) precludes the defendant from prohibiting nonresidents from fishing in the town’s freshwaters and provides:
“a. Waters stocked with fish by the state at any time after April 17, 1896 shall not be laid out in private park.
“b. Except as provided in paragraph c of this subdivision, private lands or waters stocked with fish and same by the *322 state after April 17, 1896, with the consent of the owner shall not be posted as provided in section 11-2111 and the provisions of subdivision 1 or 2 of this section, or of section 11-2113, shall not apply to such lands and waters.”
As previously noted, the State alleges that it stocked defendant’s fresh waters with fish until 1975 and it submits an exhibit indicating the nature, date and quantity of fish stocked. Finally, in addition to the Andross Patent of 1676 and the Dongan Patent of 1686 which defendant contends gave it control over fisheries in the town, defendant bases its argument that it has control over the fisheries located within its boundary on the cases of Trustees of Freeholders & Commonalty of Town of Southampton v Mecox Bay Oyster Co. (116 NY 1), People v Miller (235 App Div 226, affd 260 NY 585), Trustees of Brookhaven v Strong (60 NY 56) and Trustees of Freeholders & Commonalty of Town of Southampton v Flanders Club (113 Misc 451).
CONCLUSION
The authority of a municipality to enact local laws is conferred by article IX of the State Constitution. This authority, however, is limited by the requirement that its local laws may not be in conflict with the State Constitution nor inconsistent with the general laws of the State (People v Cook, 34 NY2d 100; Wholesale Laundry Bd. of Trade v City of New York, 17 AD2d 327, affd 12 NY2d 998).
Section 2 of article III of defendant’s regulations limits freshwater fishing in the Town of Southampton to only “residents” and any person who violates this regulation is subject to a civil penalty of $50 for each separate violation pursuant to article VII of said regulations. However, pursuant to ECL 11-0701 and 11-0703 the owner of a New York State fishing license has the privilege to fish in all New York State waters except those which have been determined to be in private ownership.
The Environmental Conservation Law is a general law and has general application to all inhabitants of the State (Sloup v Town of Islip, 78 Misc 2d 366 [Lazer, J.]). The State, by enacting the Environmental Conservation Law has evidenced a desire to pre-empt the possibility of varying local legislation by establishing a State-wide licensing *323 program. Therefore, the Town of Southampton by prohibiting that which is allowed under the Environmental Conservation Law, has enacted a regulation inconsistent with a State law of general character, thereby making defendant’s regulation invalid. (People v Lewis, 295 NY 42; People v Ingersoll, 58 NY 1; People v Wilkerson, 73 Misc 2d 895.) The Environmental Conservation Law represents the current legislative effort to establish a sound system of State-wide control and protection of State fish and wildlife resources (Sloup v Town of Islip, supra, p 371; Seacoast Prods. v City of Glen Cove, 50 AD2d 579).
The fact that defendant derived its initial authority over the town fisheries from a colonial patent does not make its regulations sacrosanct (see Demarest v Mayor, Aldermen & Commonalty of City of N. Y., 74 NY 161, 166, where the Court of Appeals stated that patents such as the Dongan Patent, have “no peculiar sanctity” because they were granted under the sovereign of England).
The authority of the Legislature to modify the Dongan Patent of 1686 to the Town of Southampton was specifically addressed in People ex rel. Squires v Hand (135 NYS 192, 195, affd 158 App Div 510), wherein the court stated “All these charters have been the subject of legislative modification. No court has questioned this power to make such changes, as such grants are not private, but public and governmental.”
Furthermore, the history of the Town of Southampton establishes that the rights and powers that defendant has in freshwater fishing in the town have always been held and exercised in a governmental capacity as opposed to ownership as a private individual (see Trustees of Freeholders & Commonalty of Town of Southampton v Betts, 163 NY 454; Trustees of Freeholders & Commonalty of Town of Southampton v Flanders Club, 113 Misc 451, supra, where the Town of Southampton contended that it held its fishing rights in a governmental capacity).
Finally, the law is well settled that, even in private waters, the Legislature has the right to regulate the taking of fish. Any ownership of an exclusive right of fishing is subordinate to regulations enacted by the Legislature for *324 the conservation of fish (Lawton v Steele, 119 NY 226; Rogers v Jones, 1 Wend 237; Bacorn v State of New York, 20 Misc 2d 369). The regulatory power of the State extends to property held by the defendant in a proprietary capacity. In State of New York v Reed (78 Misc 2d 1004) my brother Justice McInerney held that while the State may never have owned the lands under the water in the Town of Southampton its general regulatory authority extends to all land within the county whether held in a proprietary capacity or not.
Accordingly, plaintiffs’ motion for partial summary judgment is granted, and the subject regulations of the Town of Southampton are declared null and void.