# Illinois Official Reports

## Supreme Court

*People ex rel. Alvarez v. Gaughan*, 2016 IL 120110

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.* ANITA ALVAREZ, Petitioner, v. HONORABLE VINCENT GAUGHAN *et al.*, Respondents. |
| Docket No. | 120110 |
| Filed | December 1, 2016 |
| Decision Under Review | Original action for *mandamus*. |
| Judgment | Writ awarded. |
| Counsel on Appeal | Anita Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Assistant State's Attorney, of counsel), for petitioner.<br><br>Michael J. Pelletier, State Appellate Defender, Patricia Mysza, Deputy Defender, and Ginger Leigh Odom, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for respondent Steven Castleberry. |
| Justices | CHIEF JUSTICE KARMEIER delivered the judgment of the court, with opinion.<br>Justices Freeman, Thomas, Kilbride, Garman, Burke, and Theis concurred in the judgment and opinion. |

¶ 1  The petitioner, Anita Alvarez, State's Attorney of Cook County, seeks a writ of *mandamus* (see Ill. Const. 1970, art. VI, § 4(a)) to compel respondent, the Honorable Vincent Gaughan, judge of the circuit court of Cook County, to sentence defendant, Steven Castleberry, with a mandatory 15-year firearm enhancement imposed on *each* of his two convictions for aggravated criminal sexual assault. See 720 ILCS 5/12-14(a)(8), (d)(1) (West 2008) (providing, in subsection (d)(1), that "15 years shall be added to the term of imprisonment imposed by the court" for aggravated criminal sexual assault when the defendant committed the offense of criminal sexual assault while "armed with a firearm," as specified in subsection (a)(8), thus rendering the criminal sexual assault "aggravated").[1] For the following reasons, we reject arguments interposed against issuance and award the writ.

¶ 2            BACKGROUND

¶ 3  Following a jury trial, Steven Castleberry was convicted in the circuit court of Cook County of two counts of aggravated criminal sexual assault (720 ILCS 5/12-14(a)(8) (West 2008)) based on separate acts of oral and vaginal contact with the victim. At sentencing, the State argued that Castleberry was subject to a mandatory 15-year sentencing enhancement on *each* of the two convictions because the crimes had been committed while Castleberry was armed with a firearm. When added to the mandatory minimum term of six years' imprisonment for each offense, the sentencing enhancements meant Castleberry would be subject to a mandatory minimum term of 21 years' imprisonment on each conviction.

¶ 4  The circuit court disagreed with the State, concluding that the legislature had intended the enhancement to be applied only once under the circumstances. Consequently, the circuit court sentenced Castleberry to a 9-year term of imprisonment on each conviction, adding the 15-year enhancement to only one of the sentences. The two sentences were ordered to run consecutively, for a total term of 33 years' imprisonment.

¶ 5  Castleberry appealed, arguing, *inter alia*, that the 15-year enhancement was unconstitutional and, therefore, should not have been applied by the circuit court at all. The appellate court rejected Castleberry's arguments. However, the appellate court went on to address the State's contention that the 15-year enhancement was a mandatory statutory requirement that had to be added to the sentence for each of the two counts on which defendant had been convicted. The appellate court agreed with the State and, invoking the then-extant "void sentence rule," remanded the matter to the circuit court for resentencing. 2013 IL App (1st) 111791-U, ¶ 38.

¶ 6  We allowed defendant's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. July 1, 2013)), principally to address "whether the 'void sentence rule,' which states that '[a] sentence which does not conform to a statutory requirement is void' (*People v. Arna*, 168 Ill. 2d 107, 113 (1995)), should be abandoned," concluding, ultimately, that it should. *People v. Castleberry*, 2015 IL 116916, ¶¶ 1, 19. In the course of our analysis we stated that the "appellate court *** had no authority in this case to vacate the circuit court's sentencing order in response to the

_____

[1]The statute was renumbered as section 11-1.30 by Public Act 96-1551 (Pub. Act 96-1551, art. 2, § 5 (eff. July 1, 2011)), but the pertinent provisions are otherwise unchanged.

State's argument." *Id.* ¶ 25. This court determined, however, that the State was not without a remedy: "The remedy of *mandamus* *** permits the State to challenge criminal sentencing orders where it is alleged that the circuit court violated a mandatory sentencing requirement, but precludes the State from challenging ordinary, discretionary sentencing decisions." *Id.* ¶ 27. This court advised: "Nothing in this opinion should be read as preventing the State from filing such a request." *Id.*

¶ 7 Our opinion in *Castleberry*—issuing that admonishment and abolishing the "void sentence rule" as a means to correct sentences that do not comport with statutory mandates—was filed on November 19, 2015. On November 23, 2015, State's Attorney Alvarez filed in this court a motion for leave to file a petition for writ of *mandamus*, seeking—as the State had sought in the course of Castleberry's direct appeal—imposition of the 15-year mandatory sentencing enhancement with respect to *each* of Castleberry's convictions. Judge Gaughan and Castleberry are named as respondents. The attached proof of service indicates that service was effected upon Patricia Mysza, Deputy Defender of the Office of the State Appellate Defender; the Honorable Vincent M. Gaughan, Judge of the Circuit Court of Cook County; and "Lisa Madigan, Attorney General of the State of Illinois." The Office of the State Appellate Defender subsequently filed objections to Alvarez's motion on behalf of Castleberry, and its attached proof of service reflects service upon State's Attorney Alvarez, Attorney General Madigan, Judge Gaughan, and Castleberry. On February 19, 2016, this court entered an order allowing Alvarez's motion for leave to file the petition.

¶ 8 Of all the filings of record, there are none by the Attorney General. The Attorney General, despite notice of this proceeding, has not objected, nor has she taken a position contrary to that advanced by State's Attorney Alvarez.

¶ 9                                                    ANALYSIS

¶ 10 "*Mandamus* is an extraordinary remedy used to compel a public officer to perform nondiscretionary official duties." *People ex rel. Senko v. Meersman*, 2012 IL 114163, ¶ 9. This court will award *mandamus* only if the petitioner establishes a clear right to the relief requested, a clear duty of the public officer to act, and clear authority of the public officer to comply with the writ. *Id.*

¶ 11 In its criminal case against Castleberry, the State ultimately proceeded to trial on two counts of the original eight-count indictment. Those counts alleged that Castleberry violated section 12-14(a)(8) of the Criminal Code of 1961 in that he committed acts of sexual penetration upon the victim, by the use of force or threat of force, while he was "armed with a firearm." See 720 ILCS 5/12-14(a)(8) (West 2008). In count 3, the State alleged oral penetration; in count 6, the State alleged vaginal penetration. A jury returned guilty verdicts on both counts. As the State observes, "the jury's verdict demonstrated that it found beyond a reasonable doubt that defendant committed two distinct acts of sexual penetration by force while armed with a firearm. The fact that the same gun was used as an element of both counts of aggravated criminal sexual assault while armed with a firearm is immaterial ***." Thus, the State argues, two convictions, based on two separate acts of sexual penetration while armed with a firearm, warrant the imposition of two separate sentence enhancements, one for each offense.

¶ 12    Castleberry answers by arguing that (1) a conflict in statutes defeats a "clear right to relief," (2) the State's Attorney does not have standing to sue in this court on behalf of the People of the State of Illinois, and (3) the relief sought is barred by the equitable doctrine of *laches*. We note, at the outset, that counsel for respondent Castleberry conceded, at oral argument, that the 15-year sentence add-on should have been applied to each of Castleberry's convictions. In that respect, everyone appears to agree—as do we.[2]

¶ 13    The appellate court so held (2013 IL App (1st) 111791-U, ¶¶ 37-38), then cited, as authorization for its remand for resentencing, this court's decision in *People v. White*, 2011 IL 109616, ¶¶ 20-21, 26 ("a court exceeds its authority when it orders a lesser or greater sentence than that which the statute mandates," and such a sentence is "illegal and void"). In *Castleberry*, this court stated that the "appellate court *** had no authority in this case to vacate the circuit court's sentencing order in response to the State's argument." *Castleberry*, 2015 IL 116916, ¶ 25. In fact, prior to this court's repudiation of *Arna* in *Castleberry*, the appellate court *did* have that authority, and it was correct to cite *White* in support thereof. *White* cited *Arna* with approval. See *White*, 2011 IL 109616, ¶ 20. In *Arna*, this court upheld an appellate court remand—from a *defendant's* appeal—ordering the circuit court to impose statutorily mandated consecutive sentences, where concurrent sentences had been ordered by the circuit court. In *Arna*, this court stated "the actions of the appellate court were not barred by our rules which limit the State's right to appeal and which prohibit the appellate court from increasing a defendant's sentence on review." *Arna*, 168 Ill. 2d at 113. Thus, prior to our decision in *Castleberry*—in which we "abolished" the void sentencing rule (see *Castleberry*, 2015 IL 116916, ¶ 19)—the State had reason to believe it could seek correction of Castleberry's sentence in the course of his direct appeal, and the appellate court had reason to believe it had the authority to grant that relief. Those observations are relevant to, and we believe dispositive of, Castleberry's *laches* argument.

¶ 14    As this court has recently reiterated, *laches* is an equitable principle that bars recovery by a litigant whose unreasonable delay in bringing an action for relief prejudices the rights of the other party. *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 51. Stated differently, "it must appear that a plaintiff's unreasonable delay *** has prejudiced and misled defendant, or caused him to pursue a course different from what he would have otherwise taken." (Internal quotation marks omitted.) *Id.* ¶ 51. The determination of whether *laches* applies depends on the facts and circumstances of each case. *Tully v. State*, 143 Ill. 2d 425, 432-33 (1991).

¶ 15    We note, first, that there is no indication of unreasonable delay on the part of the State. The State argued its point in the circuit court, and it raised the matter immediately thereafter before the appellate court, where defendant was bringing his own challenge to the imposition of the enhancement. Despite our subsequent observations in *Castleberry* regarding the theoretical and constitutional infirmities of the "void sentence rule," it remained a viable means of correcting the circuit court's sentencing error when the State pursued it and the appellate court acted, and it had the advantage of facilitating resolution of all related sentencing issues in one proceeding before a single tribunal. Notwithstanding the contemporaneous availability of

---

[2]See generally *People v. Rodriguez*, 169 Ill. 2d 183, 188 (1996) (concluding that convictions for both home invasion and aggravated criminal sexual assault were proper as they were based on separate, independent acts, though "both offenses shared the common act of defendant threatening the victim with a gun"). The principle applied in *Rodriguez* applies as well to the facts of this case.

*mandamus* as an alternative means of rectifying sentences that did not comport with statutory mandates (see, *e.g.*, *Meersman*, 2012 IL 114163, ¶ 21), we will not find the State less than diligent in choosing this avenue of redress while it existed.

¶ 16    Moreover, it is clear that Castleberry suffered no prejudice. Even assuming, *arguendo*, undue delay on the part of the State, we note, on just *one* of his convictions, Castleberry was sentenced to 24 years' imprisonment. In the proof of service attached to his objections to Alvarez's motion for leave to file the petition for writ of *mandamus*, his address is listed as Menard Correctional Center. It is reasonable to assume he will be incarcerated for some time. This is not, as his counsel posited in answer to a question from the bench during oral argument before this court, a situation where an inmate is about to walk out the prison door when the State seeks correction of his sentence. In his brief, Castleberry suggests that the State's delay in seeking *mandamus* is "inherently prejudicial to the public, because the delay has a chilling effect on a defendant's right to appeal, and is contrary to policy considerations in favor of finality in judgments." However, the facts of *this* case—by which are we are constrained (see *Tully*, 143 Ill. 2d at 432-33)—do not support even an inference that any State delay affected Castleberry's decision to appeal, in the course of which *he* chose to put the "finality" of his sentence in question.

¶ 17    We conclude there was neither unreasonable delay in the State's assertion of sentencing error and its attempt to rectify that error, nor any conceivable prejudice to Castleberry. Hence, *laches* does not apply.

¶ 18    Nor do we find Castleberry's contention of statutory conflict of arguable merit or an impediment to granting the State's clear right to *mandamus* relief. Castleberry suggests application of the mandatory sentence enhancement at this juncture would conflict with section 5-4.5-50(d) of the Unified Code of Corrections (730 ILCS 5/5-4.5-50(d) (West 2014)) (titled "Motion to Reduce Sentence")), which generally prohibits a circuit court from increasing a defendant's sentence once it is imposed. Castleberry also cites section 5-5-4(a) of the Code of Corrections (730 ILCS 5/5-5-4(a) (West 2014)) in support of his position. That section, which applies when a conviction or sentence has been set aside, states in pertinent part that "the court shall not impose a new sentence for the same offense *** which is more severe than the prior sentence *** unless the more severe sentence is based upon conduct on the part of the defendant occurring after the original sentencing."

¶ 19    As this court noted in *People v. Moore*, 177 Ill. 2d 421, 431-32 (1997), those provisions[3] were consistent with and incorporated the reasoning of the United States Supreme Court in *North Carolina v. Pearce*, 395 U.S. 711 (1969), wherein the Court reasoned that due process of law

> " 'requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.' *Pearce*, 395 U.S. at 725, 23 L. Ed. 2d at 669, 89 S. Ct. at 2080." *Moore*, 177 Ill. 2d at 432.

---

[3]Section 5-4.5-50 was then section 5-8-1(c) of the Code of Corrections.

Obviously, the punitive concerns addressed by those statutes are not implicated in this case. Castleberry has not challenged the unlawfully lenient sentence imposed upon him by the trial judge. *Castleberry's* sentencing claim on appeal was in fact rejected by the appellate court (see 2013 IL App (1st) 111791-U, ¶ 36) and is not at issue here. There is no reason to believe that Castleberry will be the victim of judicial vindictiveness if this cause is—pursuant to vindication of *the State's* position herein—remanded for resentencing and imposition of the statutorily required firearm enhancement. This case does not present the circumstances sections 5-4.5-50(d) and 5-5-4(a) were intended to address. Imposition of the enhancement on remand is not discretionary. Thus, it cannot be the medium for judicial vindictiveness. That disposition is mandated by an enactment of the legislature, given these facts. It seems to us unreasonable to suggest that the legislature intended sections 5-4.5-50(d) and 5-5-4(a) to function as a bar against correction of sentences that do not comply with statutory mandates prescribed by the legislature elsewhere in the Code of Corrections. "In determining legislative intent, we may consider the consequences of construing the statute one way or another, and we presume that the legislature did not intend to create absurd, inconvenient, or unjust results." *People v. Bradford*, 2016 IL 118674, ¶ 25. Applying that principle of statutory construction, we hold only valid sentences may serve as the baseline for assessment of compliance with prohibitions against increase.

¶ 20 Castleberry also appears to suggest that this court's ability to order correction of his sentence, to bring it into compliance with the statutory mandate, was dependent upon the void sentence rule. In his brief to this court, Castleberry asserts:

"The abolition of *Arna's* void sentence rule makes clear that the circuit court may not increase Castleberry's sentence under the judicially-created exception to the prohibition against such increases. Because the original sentence in this case was not void, the trial court is precluded from increasing it. ***

Thus, where the State is asking for Judge Gaughan to increase Castleberry's sentence, but the circuit court is prohibited by Illinois law from increasing Castleberry's sentence, and no exceptions to this statutory prohibition exist here, the State's Attorney has not established the requisite factors for *mandamus* relief to lie."

¶ 21 However, the State is not asking Judge Gaughan to increase Castleberry's sentence; it is asking *this court* to order Judge Gaughan to *correct* his sentence, which necessarily entails an increase. To the extent Castleberry is suggesting otherwise, we note there is no jurisdictional impediment here. Illinois Supreme Court Rule 381 authorizes original *mandamus* actions in this court "to review a judge's judicial act." Ill. S. Ct. R. 381 (eff. Mar. 1, 2001). In *Meersman*, we issued a writ of *mandamus* under very similar circumstances. Pursuant to a petition filed by the State's Attorney of Rock Island County, we ordered the respondent judge to vacate defendant's sentences, which the judge had ordered to be served concurrently, and directed the judge to impose, instead, statutorily mandated consecutive sentences. See *Meersman*, 2012 IL 114163, ¶ 21 (requiring consecutive sentencing in accordance with 730 ILCS 5/5-8-4(d)(2) (West 2010)). In *Castleberry* itself, this court acknowledged that the "remedy of *mandamus* *** permits the State to challenge criminal sentencing orders where it is alleged that the circuit court violated a mandatory sentencing requirement," concluding, "[n]othing in this opinion should be read as preventing the State from filing such a request." *Castleberry*, 2015 IL 116916, ¶ 27.

¶ 22     Finally, we address Castleberry's argument that the State's Attorney of Cook County—and by logical extension *any* State's Attorney—has no standing to bring a *mandamus* action in this court to seek correction of a sentence not authorized by statute. Castleberry acknowledges that, in numerous cases cited in the State's brief, "this Court allowed the State's Attorney to appear as a relator in this Court." Indeed, the State avers, "over the past 140 years, this Honorable Court has decided many cases where a State's Attorney appeared as a relator and sought extraordinary relief of a writ of *mandamus* or prohibition in matters arising out of a criminal matter." State's Attorney Alvarez cites the following: *People ex rel. Senko v. Meersman*, 2012 IL 114163; *People ex rel. Glasgow v. Kinney*, 2012 IL 113197; *People ex rel. Alvarez v. Skryd*, 241 Ill. 2d 34 (2011); *People ex rel. Birkett v. Dockery*, 235 Ill. 2d 73 (2009); *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185 (2009); *People ex rel. Devine v. Stralka*, 226 lll. 2d 445 (2007); *People ex rel. Devine v. Sharkey*, 221 Ill. 2d 613 (2006); *People ex rel. Birkett v. Jorgensen* , 216 Ill. 2d 358 (2005); *People ex rel. Devine v. Macellaio*, 199 Ill. 2d 22l (2002); *People ex rel. Birkett v. Bakalis*, 196 Ill. 2d 510 (2001); *People ex rel. Waller v. McKoski*, l95 Ill. 2d 393 (2001); *People ex rel. Daley v. Fitzgerald*, 123 Ill. 2d 175 (1988); *People ex rel. Daley v. Strayhorn*, 121 Ill. 2d 470 (1988); *People ex rel. Daley v. Suria*, 112 Ill. 2d 26 (1986); *People ex rel. Daley v. Moran*, 94 Ill. 2d 4l (1983); *People ex rel. Daley v. Schreier*, 92 Ill. 2d 271 (1982): *People ex rel. Daley v. Limperis*, 86 Ill. 2d 459 (1981); *People ex rel. Carey v. Scotillo*, 84 Ill. 2d 170 (1981); *People ex rel. Carey v. Bentivenga*, 83 Ill. 2d 537 (1981); *People ex rel. Carey v. Chrastka*, 83 Ill. 2d 67 (1980); *People ex rel. Carey v. Collins*, 81 Ill. 2d 118 (1980); *People ex rel. Carey v. Cousins*, 77 Ill. 2d 531 (1979); *People ex rel. Carey v. Pincham*, 76 Ill. 2d 478 (1979); *People ex rel. Carey v. Rosin*, 75 Ill. 2d l5l (1979); *People ex rel. Bowman v. Woodward*, 63 Ill. 2d 382 (1976); *People ex rel. Carey v. Covelli*, 61 Ill. 2d 394 (1975); *People ex rel. Carey v. Power*, 59 Ill. 2d 569 (1975); *People ex rel. Bowman v. Woodward*, 61 Ill. 2d 231 (1974); *People ex rel. Ward v. Moran*, 54 Ill. 2d 552 (1973); *People ex rel. Hanrahan v. Power*, 54 Ill. 2d 154 (1973); *People ex rel. Sears v. Romiti*, 50 Ill. 2d 5l (1971); *People ex rel. Hollis v. Chamberlain*, 49 Ill. 2d 403 (1971); *People ex rel. Hanrahan v. Felt*, 48 Ill. 2d 171 (1971); *People ex rel. Stamos v. Jones*, 40 Ill. 2d 62 (1968*); *People ex rel. Ward v. Salter*, 28 Ill. 2d 612 (1963); *People ex rel. Adamowski v. Dougherty*, 19 Ill. 2d 393 (1960); *People ex rel. Swanson v. Fisher*, 340 Ill. 250 (1930); *People ex rel. Swanson v. Sullivan*, 339 Ill. 146 (1930); *People ex rel. Smith v. Jenkins*, 325 Ill. 372 (1927); *People ex rel. Fullenwider v. Jenkins*, 322 Ill. 33 (1926); *People ex rel. Hoyne v. Newcomer*, 284 Ill. 315 (1918); *People ex rel. Hoyne v. Lueders*, 269 Ill. 205 (1915); *People ex rel. Metzner v. Edwards*, 66 Ill. 59 (1872).

¶ 23     Notwithstanding the historical practice represented by those cases, Castleberry argues that lack of standing was not asserted therein; thus, "[t]hose cases are not contrary to this point." In support of his revelatory position, Castleberry cobbles together generic authority from diverse sources, arguing that "the Attorney General is the only officer authorized to bring a petition for a writ of *mandamus* in the Illinois Supreme Court."

¶ 24     Castleberry begins with this quote extracted from this court's opinion in *People ex rel. Scott v. Briceland*, 65 Ill. 2d 485 (1976): "[T]he Attorney General is the sole officer authorized to represent the People of this State in any litigation in which the People of the State are the real party in interest ***." *Id.* at 500 (discussing *Fergus v. Russel*, 270 Ill. 304 (1915), and its incorporation into the 1970 Constitution (Ill. Const. 1970, art. V, § 15)). We do not find that generic statement, rendered in a different context, dispositive of the issue before us.

¶ 25    *Fergus* involved, *inter alia*, a legislative enactment that purported to strip the Attorney General of powers and duties relating to insurance and transfer them to the insurance superintendent. *Fergus*, 270 Ill. at 334-35. This court found that action impermissible and, pursuant to that finding, declared appropriations to the insurance superintendent "for legal services and for traveling expenses of attorneys and court costs in prosecutions for violations of insurance laws *** unconstitutional and void." *Id.* at 342.

¶ 26    In *Briceland*, an action was brought seeking a declaratory judgment that only the Attorney General was empowered to institute and prosecute cases before the Pollution Control Board. The *Briceland* plaintiffs also sought an injunction barring the Environmental Protection Agency from pursuing actions before the Pollution Control Board. This court held that a provision of the Environmental Protection Act authorizing the Environmental Protection Agency to prosecute cases before the Pollution Control Board was unconstitutional because "the Attorney General is the sole officer entitled to represent the interests of the State in litigation conducted before the Pollution Control Board." *Briceland*, 65 Ill. 2d at 500.

¶ 27    Neither *Briceland* nor *Fergus* addressed the powers of State's Attorneys *vis-à-vis* the Attorney General. As this court observed in *County of Cook ex rel. Rifkin v. Bear Stearns & Co.*, 215 Ill. 2d 466 (2005):

> "Like the Attorney General, a State's Attorney is a constitutional officer. The 1870 Illinois Constitution provided that there 'be elected a state's attorney in and for each county in lieu of the state's attorneys now provided by law.' Ill. Const. 1870, art. VI, § 22. This court has held that the State's Attorney is a State officer under the 1870 Constitution. *Hoyne v. Danisch*, 264 Ill. 467, 470-73 (1914). The 1970 Illinois Constitution contains a similar provision: 'A State's Attorney shall be elected in each county in 1972 and every fourth year thereafter for a four year term.' Ill. Const. 1970, art. VI, § 19. In *Ingemunson v. Hedges*, 133 Ill. 2d 364, 369-70 (1990), we reaffirmed the holding in *Hoyne*, noting that the debates of the Sixth Illinois Constitutional Convention of 1970 indicate the drafters of the 1970 Constitution agreed that State's Attorneys should be classified as state, rather than county, officers." *Id.* at 474-75.

Further, we noted that a "State's Attorney is a constitutional officer with rights and duties 'analogous to or largely coincident with the Attorney General, though not identical, and the one to represent the county or People in matters affected with a public interest.' " *Id.* at 476 (quoting *People ex rel. Kunstman v. Nagano*, 389 Ill. 231, 249 (1945)). This court concluded that "[t]he State's Attorney's powers are analogous to and largely coincident with those of the Attorney General and it follows, therefore, that the legislature may not usurp those constitutionally derived powers." *Id.* at 478.

¶ 28    In support of his position, Castleberry cites two legislative enactments, arguing that they restrict the authority of State's Attorney Alvarez to act in this instance. He first resorts to section 4 of the Attorney General Act (15 ILCS 205/4 (West 2014)), which recites various "duties of the Attorney General," among them: "To appear for and represent the people of the State before the supreme court in all cases in which the State or the people of the State are interested." Castleberry then cites section 3-9005(a)(1) of the Counties Code (55 ILCS 5/3-9005(a)(1) (West 2014)), stating that each State's Attorney shall "commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, *in the circuit court for his county*." (Emphasis added.)

¶ 29    Castleberry does not mention subsection (a)(8) of section 3-9005, which speaks to the collaborative relationship of the State's Attorney and Attorney General. That subsection, in pertinent part, charges the State's Attorney "[t]o assist the attorney general whenever it may be necessary, and in cases of appeal from his county to the Supreme Court, to which it is the duty of the attorney general to attend, *** [to] furnish the attorney general *** a manuscript of a proposed statement, brief and argument to be printed and filed on behalf of the people, prepared in accordance with the rules of the Supreme Court." 55 ILCS 5/3-9005(a)(8) (West 2014). Nor does Castleberry acknowledge the catchall provision in subsection (a)(11) of section 3-9005, which provides, broadly, that the State's Attorney shall "perform such other and further duties as may, from time to time, be enjoined on him by law." 55 ILCS 5/3-9005(a)(11) (West 2014).

¶ 30    Even if the legislature could, constitutionally, usurp or diminish the powers of State's Attorneys and the Attorney General heretofore recognized—and *Rifkin*, *Briceland*, and *Fergus* suggest the legislature cannot—we do not read the statutes cited by Castleberry—*prescribing* certain *duties* of the Attorney General and State's Attorneys, respectively—as *diminishing* or *circumscribing* their *powers*, yet that is what Castleberry contends. That the Attorney General has a duty "[t]o appear for and represent the people of the State before the supreme court in all cases in which the State or the people of the State are interested" (see 15 ILCS 205/4 (West 2014)) does not necessarily mean that the State's Attorney from whose county the matter arises lacks the authority or standing to do so, particularly when he or she represented the People of the State of Illinois in that very case. That the State's Attorney is assigned a statutory duty to "commence and prosecute all actions, in the circuit court for his county," and "defend all actions and proceedings brought against his county" (55 ILCS 5/3-9005(a)(1), (a)(4) (West 2014)), does not necessarily mean that the authority of the State's Attorney—a *state* officer (see *Rifkin*, 215 Ill. 2d at 475) licensed to practice in this court—to seek a legislatively mandated result, in a case he or she initiated on behalf of the People of the State of Illinois, ends in the circuit court. Apart from any authority inherent in the office, subsections (a)(8) and (a)(11) of section 3-9005, respectively, make clear that (1) the State's Attorney may act as the Attorney General's agent or "assist the attorney general whenever it may be necessary" and, specifically, function as an active participant—with the Attorney General—in appeals to this court from his or her county, the attorney in fact responsible for preparing written argument in State appeals, and (2) the enumeration of a State's Attorney's duties in section 3-9005 is not meant to be all-inclusive or restrictive, as evinced by subsection (a)(11)'s broad, catchall language.

¶ 31    To be sure, the Attorney General is the chief law enforcement officer of the state and, as such, is afforded a broad range of discretion in the performance of public duties, including the discretion to institute proceedings in any case of purely public interest. *Lyons v. Ryan*, 201 Ill. 2d 529, 539 (2002). The primacy of the Attorney General in that respect is not open to question. However, in reaffirming the *Attorney General's* discretionary preeminence in such matters, even this court has blurred the line between the authority of the Attorney General and that of State's Attorneys. See *id.* (citing, in support of Attorney General's discretionary authority, cases referencing the *State's Attorneys'* discretionary authority).[4]

---

[4]See *People v. Mack*, 105 Ill. 2d 103, 115 (1984) ("The State's Attorney is the representative of the People and has the responsibility of evaluating the evidence and other pertinent factors and determining

¶ 32    Though the Attorney General undoubtedly could have instituted and prosecuted this *mandamus* action—and consistent with section 4 of the Attorney General Act, could have entered an appearance and made her position in this matter *explicit*—we hold, given the facts of this case, that the State's Attorney from whose county the underlying criminal case arose had the authority and standing to bring this action as well. In so holding, we rely, cumulatively, on the following: (1) longstanding case authority acknowledging that a "State's Attorney is a constitutional officer with rights and duties 'analogous to or largely coincident with the Attorney General *** and the one to represent the county or People in matters affected with a public interest' " (see *Rifkin*, 215 Ill. 2d at 476 (quoting *Nagano*, 389 Ill. at 249)); (2) notice to the Attorney General of the pendency of this action, and no objection on her part therefrom or attempt to intervene or espouse a position contrary to that taken by the State's Attorney, who may properly be seen as a state agent of the people and the Attorney General in this matter; (3) the legislature's recognition of, and/or acquiescence in, the plenipotential part a State's Attorney may play in "assist[ing] the attorney general whenever it may be necessary" and, specifically, a State's Attorney's role in challenging an erroneous circuit court judgment rendered against the people of the State of Illinois in his or her county (see 55 ILCS 5/3-9005(a)(8) (West 2014)); and (4) the legislature's acknowledgment that the powers and duties of State's Attorneys are broader than those specifically enumerated in section 3-9005 and may include those not heretofore explicitly recognized and those that are subsequently imposed "by law" (see 55 ILCS 5/3-9005(a)(11) (West 2014)).[5]

¶ 33                                         CONCLUSION
¶ 34    In view of Castleberry's concession, indeed the agreement of all concerned—the parties, the appellate court, and this court—that, pursuant to subsections (d)(1) and (a)(8) of the aggravated criminal sexual assault statute and this court's precedent, two convictions based on two separate acts of sexual penetration while armed with a firearm warrant the imposition of two separate sentence enhancements, one for each offense, we issue a writ of *mandamus*, ordering the respondent judge to vacate his sentencing order and resentence Castleberry, imposing the mandatory firearm enhancement on both of Castleberry's convictions. In so

---

what offense can properly and should properly be charged." (quoting *People v. Rhodes*, 38 Ill. 2d 389, 396 (1967))), *vacated on other grounds*, 479 U.S. 1074 (1987).

[5]As we have noted herein, the Attorney General, as the chief legal officer of the state, has discretionary preeminence in legal matters involving the public interest. As evinced by cases pending before the court this very term, the Attorney General may exercise her discretion by assuming different procedural stances, depending upon her assessment of the individual case. Compare People *ex rel.* Glasgow v. Carlson, No. 120544 (Sept. Term 2016) (Attorney General brings a *mandamus* action, arguing that the circuit court failed to comply with mandatory sentencing requirements), with People *ex rel.* Alvarez v. Gaughan, No. 120110 (Sept. Term 2016) (Attorney General, with notice of pendency of the action, allows State's Attorney to proceed with her argument that circuit court failed to comply with mandatory sentencing requirements, signaling Attorney General's implicit acceptance of State's Attorney's standing and argument advanced by State's Attorney), and People *ex rel.* Alvarez v. Howard, No. 120729 (Sept. Term 2016) (Attorney General appears on behalf of, and supports the legal position taken by, circuit judge but does not dispute State's Attorney's right or standing to bring a *mandamus* action in a proper case for purpose of fully presenting alternative views for judicial determination).

doing, as aforesaid, we reject Castleberry's contentions that (1) the relief sought is barred by the equitable doctrine of *laches*, (2) a conflict in statutes defeats a "clear right to relief," and (3) the State's Attorney does not have standing to sue in this court on behalf of the People of the State of Illinois.

¶ 35        Writ awarded.