**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 180202-U

Order filed June 11, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, ex rel. KAREN DONNELLY, State's Attorney of La Salle County, Illinois, | ) ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, La Salle County, Illinois. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | |
| CITY OF SPRING VALLEY, ILLINOIS, a municipal corporation, SPRING VALLEY POLICE DEPARTMENT, KEVIN SANGSTON, as Chief of Police of the SPRING VALLEY POLICE DEPARTMENT, CITY OF OTTAWA, ILLINOIS, a municipal corporation, and CITY OF LA SALLE, ILLINOIS, a municipal corporation, | ) ) ) ) ) ) ) ) ) ) | Appeal No. 3-18-0202 Circuit No. 17-L-91 The Honorable Robert C. Marsaglia, |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE LYTTON delivered the judgment of the court.
Justice O'Brien concurred in the judgment.
Justice Holdridge dissented.

_____

**ORDER**

¶ 1      *Held*: State's Attorney, acting on behalf of county and its citizens, lacked standing to recover funds from municipalities, police department and chief of police, where law enforcement agency entitled to funds under Cannabis Control Act was no

longer in existence when complaint was filed and county had no right to funds under Act.

¶ 2  Plaintiff State of Illinois, ex rel. Karen Donnelly, State's Attorney for La Salle County, filed its second amended complaint against defendants City of Spring Valley, Spring Valley Police Department and its Chief of Police, City of Ottawa, and City of La Salle, alleging *ultra vires* acts and unjust enrichment. All defendants filed motions to dismiss. The trial court granted the motions and dismissed plaintiff's complaint with prejudice. We affirm.

¶ 3                                       FACTS

¶ 4  In 2011, then LaSalle County State's Attorney Brian Towne formed the State's Attorney Felony Enforcement ("SAFE") unit for the purpose of drug interdiction on Interstate 80 in La Salle County. Towne created the SAFE unit pursuant to section 3-9005(b) of the Counties Code, 55 ILCS 5/3-9005(b) (West 2010). The SAFE unit was staffed by two retired Illinois State Police troopers and a Spring Valley police officer, who was paid a salary by the City of Spring Valley and also received a monthly stipend of $300 from forfeiture funds. Towne provided the SAFE unit with an office, computer, phones and vehicles.

¶ 5  In early November 2011, Towne applied for and received an Originating Agency Identifier (ORI) number for the SAFE unit to use to report funds and items seized to the Illinois State Police pursuant to the Cannabis Control Act (Act) (720 ILCS 550/1 *et seq*. (West 2010)). On November 22, 2011, Towne entered into a Memorandum of Understanding with Spring Valley Chief of Police Kevin Sangston, allowing Spring Valley police officers to provide law enforcement assistance to the SAFE unit in La Salle County. The agreement was never approved by the La Salle County Board or the Spring Valley City Council.

¶ 6  The SAFE unit operated on Interstate 80 between 2011 and 2015. During that time, it seized nearly $1,000,000. All money seized by the SAFE unit was deposited into a special

2

account belonging to the City of Spring Valley. The funds were then transferred from the special Spring Valley account to Spring Valley's general disbursement fund. The funds were then transferred to the Illinois State Police, along with a transmittal order and inventory form listing the SAFE unit as the law enforcement entity wholly responsible for the seizure of the funds. The Director of Illinois State Police then returned 65% of the seized proceeds to the SAFE unit pursuant to section 12 of the Act (720 ILCS 550/12 (West 2010)).

¶ 7    The SAFE unit received $573,452.18 from the Illinois State Police from July 2012 to July 2015. Towne forwarded the checks the SAFE unit received to Sangston, who deposited them into Spring Valley's Drug Asset Forfeiture Fund. Sangston then transferred from that fund approximately $100,000 each to the City of LaSalle and the City of Ottawa. The remainder of the fund was used by Spring Valley.

¶ 8    On June 3, 2015, we issued our opinion in *People v. Ringland*, 2015 IL App (3d) 130523, ¶ 48, holding that Towne's SAFE unit "exceeded the scope of section 3-9005(b) [of the Counties Code]." We found that Towne had no authority to equip investigators "with squad cars and ticket books for the purpose of patrolling the highways." *Id*. ¶ 47. The supreme court affirmed our decision, holding that "the conduct of the SAFE unit fell outside the scope of section 3-9005(b)." *People v. Ringland*, 2017 IL 119484, ¶¶ 33, 35. By 2016, the SAFE unit had disbanded and ceased all operations.

¶ 9    Towne's tenure as La Salle County State's Attorney ended on November 30, 2016. Karen Donnelly became La Salle County State's Attorney on December 1, 2016. On February 7, 2017, Donnelly made a written demand to the City of Spring Valley requesting the return of the SAFE unit funds Towne transferred to it. Spring Valley refused to return the funds.

¶ 10        In December 2017, plaintiff filed its second amended complaint, alleging *ultra vires* acts and unjust enrichment. All defendants filed motions to dismiss, pursuant to sections 2-615 and 2-619 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2016)).

¶ 11        The trial court granted defendants' motions and dismissed plaintiff's complaint with prejudice, ruling that it did "not allege sufficient facts to prevail against Defendants' Motions to Dismiss." The court found that plaintiff's complaint was barred by equitable estoppel and *laches*. The court also found that the complaint failed to state a cause of action against the cities of La Salle and Ottawa.

¶ 12                                              ANALYSIS

¶ 13        We review a trial court's dismissal under sections 2-615 and 2-619 of the Code *de novo*. *Wofford v. Tracy*, 2015 IL App (2d) 141220, ¶ 27. When reviewing the trial court's dismissal, we may affirm on any basis present in the record regardless of the basis relied on by the trial court. *Id*.

¶ 14        Section 2-619(a)(9) of the Code permits dismissal of a complaint where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2016). "The phrase 'affirmative matter' refers to something in the nature of a defense that negates the cause of action completely or refutes crucial conclusion of law or conclusions of material fact contained in or inferred from the complaint." *Glisson v. City of Marion*, 188 Ill. 2d 211, 220 (1999). Lack of standing is an "affirmative matter" justifying dismissal of a complaint. *Id*.

¶ 15        "[T]he doctrine of standing is designed to 'preclude persons who have no interest in a controversy from bringing suit.' " *Jackson v. Randle*, 2011 IL App (4th) 100790, ¶ 14 (quoting *Glisson*, 188 Ill. 2d at 221). Under the doctrine, a plaintiff seeking to invoke the jurisdiction of

4

the court "must have some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." *Jenner v. Wissore*, 164 Ill. App. 3d 259, 267 (1988).

¶ 16     Whether a plaintiff has standing is determined from the allegations contained in the complaint. *Illinois Ass'n of Realtors v. Stermer*, 2014 IL App (4th) 130079, ¶ 26. The plaintiff must allege and establish "some injury to a legally cognizable interest." *Powell v. Dean Foods Co.*, 2012 IL 111714, ¶ 35. The claimed injury, whether actual or threatened, must be "(1) distinct and palpable; (2) fairly traceable to the defendant's actions; and (3) substantially likely to be prevented or redressed by the grant of the requested relief." *Glisson*, 188 Ill. 2d at 221 (citing *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 492-93 (1988)).

¶ 17     To have standing, "[a] party must assert its own legal rights and interests, rather than assert a claim for relief based on the rights of third parties." *Powell*, 2012 IL 111714, ¶ 36. Where a plaintiff has no standing, the proceedings must be dismissed because "lack of standing negates a plaintiff's cause of action." *Wexler v. Wirtz Corp.*, 211 Ill. 2d 18, 22 (2004).

¶ 18     Pursuant to the version of the Cannabis Control Act in effect during the existence of the SAFE unit, all money seized by law enforcement officials was placed in the custody of the Director of State Police. See 720 ILCS 550/12(d) (West 2014). When forfeiture proceedings were complete, the Director distributed the money as follows: (1) 65% "to the metropolitan enforcement group, local, municipal, county, or state law enforcement agency or agencies which conducted or participated in the investigation resulting in the forfeiture"; (2) 12.5% to "the Office of the State's Attorney of the county in which the prosecution resulting in the forfeiture was instituted"; (3) 12.5% to the "Office of the State's Attorneys Appellate Prosecutor"; and (4)

5

10% "retained by the Department of State Police for expenses related to the administration and sale of seized and forfeited property." 720 ILCS 550/12(g) (West 2014).

¶ 19     Here, plaintiff seeks to recover the funds the State Police distributed to the SAFE unit, which Towne transferred to defendants City of Spring Valley and Chief Sangston, some of which Sangston provided to the cities of Ottawa and La Salle. Plaintiff alleges in its complaint that the funds "rightfully belong[ ] to SAFE and the people of La Salle County." We disagree.

¶ 20     Pursuant to section 12(g)(1) of the Act, the SAFE unit was entitled to receive 65% of the forfeited funds it recovered as "the metropolitan enforcement group, local, municipal, county, or state law enforcement agency or agencies which conducted or participated in the investigation resulting in the forfeiture." 720 ILCS 550/12(g)(1) (West 2014). However, the SAFE unit no longer exists because Towne had no authority to create it. See *Ringland*, 2017 IL 119484, *aff'g* 2015 IL App (3d) 130523.

¶ 21     A nonexistent entity lacks standing to institute an action. *Trustees of the Freeholders & Commonalty of the Town of Huntington v. Environmental Protection Agency*, 55 F.R.D. 445, 454 (E.D. N.Y. 1972); see also *Shore Management Corp. v. Erickson*, 314 Ill. App. 571 (1942) (dissolved corporation lacked capacity to sue). When a plaintiff acts as a representative of another person or entity, the plaintiff stands in the shoes of and takes the rights of that person or entity. See *Moon v. Rhode*, 2016 IL 119572, ¶ 39; *In re Estate of Jagodowski*, 2017 IL App (2d) 160723, ¶ 56. If the represented individual or entity lacks standing to maintain the proceeding, so does the representative. See *Jagodowski,* 2017 IL App (2d) 160723, ¶ 52; *Moon*, 2016 IL 119572, ¶ 39.

¶ 22     Here, plaintiff stands in the shoes of the SAFE unit and takes only the rights it possesses. Because the SAFE unit is a nonexistent entity, it has no standing to bring an action. See *Trustees*

*of the Freeholders & Commonalty of the Town of Huntington*, 55 F.R.D. at 454. Thus, plaintiff is likewise precluded from bringing an action on behalf of the SAFE unit. See *Jagodowski,* 2017 IL App (2d) 160723, ¶ 52; *Moon*, 2016 IL 119572, ¶ 39.

¶ 23    Plaintiff also alleges that its action is brought on behalf of the "people of La Salle County." However, the "people of La Salle County" are not entitled to the funds at issue. As set forth in Section 12 of the Act, funds seized pursuant to the Act are held by the Director of State Police and then distributed to various governmental entities, none of which is the county itself. See 720 ILCS 550/12(g)(1)-(3) (West 2014) (seized funds distributed to (1) law enforcement agency responsible for forfeiture, (2) State's Attorney's Office "of the county in which the prosecution resulting in the forfeiture was instituted" and (3) "Office of the State's Attorneys Appellate Prosecutor"). Because La Salle County was not entitled to any funds under the Act, plaintiff lacks standing to contest Towne's payment of the funds to defendants. See *Board of Trustees of Community College District No. 508 v. Rosewell*, 262 Ill. App. 3d 938, 954 (1992) (a plaintiff does not have standing to contest the payment of funds absent a colorable claim to the funds).

¶ 24    Standing requires the plaintiff to have a right, title or interest in the subject matter of the controversy. See *Jenner*, 164 Ill. App. 3d at 267. In this case, La Salle County has no claim to or interest in the funds distributed by Towne. Although La Salle County is where the SAFE unit operated and where its seizures occurred, nothing in the Act authorizes the funds seized by the SAFE unit to be distributed to the county. Plaintiff lacks standing to bring this action to recover the funds Towne distributed to defendants.

¶ 25    Because we affirm the trial court's dismissal of plaintiff's complaint based on lack of standing, we need not consider whether other bases, such as equitable estoppel and *laches*, also support dismissal of the complaint.

¶ 26                                     CONCLUSION

¶ 27    The judgment of the circuit court of La Salle County is affirmed.

¶ 28    Affirmed.

¶ 29    JUSTICE HOLDRIDGE, dissenting.

¶ 30    I dissent.  I would reverse the trial court's dismissal of the Plaintiffs' complaint.  As an initial matter, I believe that the Defendants have failed to establish that Plaintiff Karen Donnelly, the State's Attorney of LaSalle County, lacks standing to bring the instant action. A party has standing to bring a claim when that party has a real interest in the outcome of the controversy. *Chicago Teachers Union, Local 1 v. Board of Education of City of Chicago*, 189 Ill. 2d 200, 206 (2000); see also *Hill v. Butler*, 107 Ill. App. 3d 721 725 (1982) ("The concept of standing to bring suit requires that parties before the court seeking relief have a sufficiently protectable interest pursuant to statute or common law which is alleged to be injured.").  To have standing, a party must have sustained some injury (actual or threatened) to a legally cognizable interest that is (1) distinct and palpable; (2) fairly traceable to the defendant's actions; and (3) substantially likely to be prevented or redressed by the grant of the requested relief.  *Chicago Teachers Union, Local 1*, 189 Ill. 2d at 206-07; *Glisson v. City of Marion*, 188 Ill. 2d 211, 221 (1999).  Lack of standing is an affirmative defense.  *Chicago Teachers Union, Local 1*, 189 Ill. 2d at 206; *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 494 (1988). Accordingly, a plaintiff need not allege facts establishing standing; rather, it is the defendant's burden to plead and prove lack of standing. *Chicago Teachers Union, Local 1*, 189 Ill. 2d at 206.

8

¶ 31    In ruling on a section 2-619 motion to dismiss for lack of standing, a court must accept as true all well-pleaded facts in plaintiff's complaint and all inferences that can reasonably be drawn in plaintiff's favor. *Id*.; *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 85, (1995). The court should grant the motion only if the plaintiff can prove no set of facts that would support a cause of action. *Chicago Teachers Union, Local 1*, 189 Ill. 2d at 206. Our review of a trial court's disposition of a section 2–619 motion is *de novo*. *Id.*; *Carver v. Nall*, 186 Ill. 2d 554, 557 (1999).

¶ 32    In this case, the current State's Attorney of LaSalle County, Karen Donnelly, acting on behalf of LaSalle County and its citizens, has filed a claim for unjust enrichment against the Defendants seeking to recover $573,000 in drug forfeiture funds that were wrongfully given to the Defendants by the former State's Attorney of LaSalle County, Brian Towne, who had improperly created and operated the "SAFE" police unit for purposes of drug interdiction in LaSalle County. The complaint alleges that, pursuant to the Cannabis Control Act (Act) (720 ILCS 550/1 *et seq.* (West 2010)), the funds at issue should have been distributed only to the SAFE unit itself, because SAFE was the only "local, municipal, county, or state law enforcement agency" which "conducted or participated in the investigation resulting in the forfeiture." 720 ILCS 550/12(g)(1)(i) (West 2010). Moreover, the Act required SAFE to use those funds "for the enforcement of laws governing cannabis and controlled substances; for public education *in the community* or schools in the prevention or detection of the use of drugs or alcohol; or for security cameras used for the prevention or detection of violence." (Emphasis added). The complaint alleges that, rather than allocate the funds at issue to SAFE for the statutorily-prescribed uses within LaSalle County, Towne gave the funds to the City of Spring Valley (a municipality

9

located in Bureau County), which gave a portion of the funds to the cities of Ottawa and LaSalle and spent the rest on its own purposes.

¶ 33    Accepting the complaint's factual allegations as true and drawing all reasonable inferences in the Plaintiff's favor, as we must, I believe that the Defendants have failed to demonstrate that the Plaintiff lacks standing to bring this action. The complaint suggests that the SAFE unit was created by Towne as an arm of the LaSalle County State's Attorney. Pursuant to the Memorandum of Understanding between Towne and Defendant Sangston (Chief of the Spring Valley Police Department), SAFE was directly under Towne's control. (That fact is further reflected in the name that Towne gave the unit: "The *State's Attorney's* Felony Enforcement unit.") Towne was the State's Attorney of LaSalle County, and he created the SAFE unit to operate under his auspices within LaSalle County.[1] Pursuant to the Cannabis Control Act, 65% of all drug forfeiture funds resulting from SAFE investigations (which amounts to $573,000) was required to go to SAFE itself for certain specified uses within SAFE's "community" or jurisdiction (*i.e.,* within LaSalle County). Thus, LaSalle County and its citizens have a real interest in those funds, and they were deprived of that interest by the actions of Towne and the Defendants. Under these circumstances, the current State's Attorney of LaSalle County, Donnelly, has standing to sue on behalf of LaSalle County and its citizens to recover those funds that Towne and the defendants wrongfully misappropriated. 55 ILCS 5/3-9005(a) (West 2016) (providing that a State's Attorney has the power and duty to, *inter alia* (1) "commence and prosecute all actions, suits, *** civil and criminal, in the circuit court for his county, in which the people of the State *or county* may be concerned (55 ILCS 5/3-9005(a)(1)); (2) "prosecute *** all actions and proceedings for the recovery of debts, revenues, moneys, ***

---

[1] The complaint alleges that the SAFE unit conducted its investigations and arrests within LaSalle County and that the vast majority of the SAFE unit's operating expenses were paid by LaSalle County.

10

and forfeitures accruing to the State *or his county* (55 ILCS 5/3-9005(a)(2));; and (3) "perform such other and further duties as may, from time to time, be enjoined on him by law." (Emphasis added.) (55 ILCS 5/3-9005(a)(11) (West 2016)); see also *People ex rel. Alvarez v. Gaughan*, 2016 IL 120110, ¶ 32 (noting that the State's Attorney is authorized to "represent the county or People in matters affected with a public interest" (internal quotation marks omitted). In addition, the citizens of LaSalle County have a protectable interest in ensuring that public officials follow the requirements of public statutes like the Act. *Lombard Historical Comm'n*, 366 Ill. App. 3d at 718; *Hill*, 107 Ill. App. 3d at 725.

¶ 34    The majority holds that the Plaintiff lacks standing because: (1) under the Act, only the investigating "law enforcement agency" (*i.e.*, SAFE) was entitled to the funds at issue, not LaSalle County or its citizens; and (2) SAFE no longer exists and is therefore incapable of suing to recover the funds. *Supra* ¶¶ 20-24. I disagree. Although the Act required that the funds at issue must be distributed to SAFE, it required SAFE to use the funds for certain particular purposes in the community where it operated. Here, that community was LaSalle County. Accordingly, under the Act, the County and its citizens had a tangible and protectable interest in the funds distributed to SAFE. As noted above, the Attorney General has standing to file suit on behalf of the County and its citizens to recoup the funds at issue. The fact that SAFE no longer exists is immaterial. The Plaintiff is suing to protect the interests of LaSalle County and its citizens, not SAFE. Those entities still exist and have standing to sue.

¶ 35    Further, I believe that the trial court erred by dismissing the Plaintiff's complaint on grounds of equitable estoppel and laches. Under principles of equitable estoppel, a party is barred from asserting rights that may otherwise have existed against another party who, in good faith, relied upon the first party's conduct and "has been thereby led to change his or her position

11

for the worse." *Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 313 (2001). Equitable estoppel is "ordinarily a question of fact and only becomes a question of law when there is no dispute as to the material facts and only one inference can be drawn from these facts." *Board of Library Trustees of Village of Midlothian v. Board of Library Trustees of Posen Public Library District*, 2015 IL App (1st) 130672, ¶ 31. Here, the trial court found the Plaintiff's claim barred by equitable estoppel due to a hypostasized agreement between Towne and the Defendants regarding the distribution of the forfeiture funds obtained as a result of SAFE investigations. However, the Memorandum of Understanding between Towne and Sangston is silent as to the distribution of forfeiture funds, and it requires any subsequent modification or amendment of its terms to be in writing. The parties have not alleged that any such written agreement exists. Moreover, if Towne did not have the legal authority to distribute the funds at issue to Spring Valley and the other Defendants (as the Plaintiff has alleged), then both the Memorandum of Understanding (which was never adopted by the County) and any future agreement between Towne and the Defendants to that effect would be void, and neither such agreement may be used to invoke collateral estoppel against the County. See *D.C. Consulting Engineers , Inc. v. The Batavia Park District*, 143 Ill. App. 3d 60 (1986); *Eertmoed v. City of Pekin*, 83 Ill App. 3d 362 (1980). Accordingly, the well-pleaded facts in the Plaintiffs' complaint support a reasonable inference that equitable estoppel does not apply.

¶ 36     The trial court's dismissal of the complaint based upon laches was also error. Laches is an equitable principle that bars recovery by a litigant whose unreasonable delay in bringing an action for relief prejudices the rights of the other party. *Gaughan*, 2016 IL 120110, ¶ 14. For laches to apply, "it must appear that a plaintiff's unreasonable delay *** has prejudiced and misled defendant, or caused him to pursue a course different from what he would have otherwise

taken." (Internal quotation marks omitted.) *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 51. The determination of whether laches applies depends on the facts and circumstances of each case. *Gaughan*, 2016 IL 120110, ¶ 14; *Tully v. State*, 143 Ill. 2d 425, 432–33 (1991).[2]

¶ 37    The well-pleaded facts of the Plaintiffs' complaint do not support a reasonable inference of laches, particularly when all reasonable inferences from the well-pleaded facts are drawn in the Plaintiff's favor. The Plaintiff has not alleged that the County or any County official was aware of the Memorandum of Understanding between Towne and Sangston or of Towne's improper disbursement of SAFE forfeiture funds to the Defendants, much less that the County deliberately chose not to act despite having such knowledge. The defendants have provided no documentary evidence supporting any such claim. It is further unclear at this point in the litigation whether the Defendants would be prejudiced if they were forced to return the forfeiture funds. The Plaintiff's complaint does not allege any such prejudice, and, at this early stage of the litigation, the Defendants have not presented any evidence supporting their claim of prejudice. Spring Valley never included any expectation of or receipt of any SAFE forfeiture funds in its budgets, and the current record is silent as to the effect that the return of such funds would have on Spring Valley's budget (or any of the other defendant's budgets), if any. Accordingly, the trial court's application of laches in this case was premature.

¶ 38    Finally, in my view, the Plaintiff has adequately stated a claim against the Defendants for unjust enrichment. To prevail on a claim for unjust enrichment, a plaintiff must prove that the

---

[2] Although *Monson v. County of Grundy*, 394 Ill. App. 3d 1091 (2009), suggests that a delay of six months or more in exercising one's rights is *per se* unreasonable, a review of the relevant caselaw confirms that this rule applies only to certain types of claims not at issue here, such as objections to a county's or municipality's budget process (*id.*) or a discharged employee's claim for reinstatement of benefits (see, *e.g.*, *Summers v. Village of Durand*, 267 Ill. App. 3d 767 (1994); *Bill v. Board of Education of Cicero School District 99*, 351 Ill. App. 3d 47 (2004)).

13

defendant "retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience." *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 160 (1989); *National Union Fire Insurance Co. of Pittsburgh v. DiMucci*, 2015 IL App (1st) 12272534, ¶ 67.  Where the benefit was transferred to the defendant by a third party, a claim for unjust enrichment is recognized in the following situations: (1) where the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead; (2) where the defendant procured the benefit from the third party through some type of wrongful conduct; or (3) where the plaintiff for some other reason had a better claim to the benefit than the defendant.  *HPI Health Care Services*, 131 Ill. 2d at 161-62; *DiMucci*, 2015 IL App (1st) 12272534, ¶ 67.

¶ 39	Here, the Plaintiff alleged that Towne (not LaSalle County) gave the $573,000 in SAFE forfeiture funds to Spring Valley and that LaSalle County had a better claim to those funds than did Spring Valley.  In support of the latter assertion, the Plaintiff alleged, *inter alia*, that: (1) the Act required the funds to go to SAFE and required SAFE to spend the funds for certain particular community purposes within LaSalle County; (2) Spring Valley had no legal or equitable claim to the funds because it was neither a participating law enforcement agency nor a county or municipality with SAFE's or Towne's jurisdiction; (3) all arrests made by SAFE occurred in LaSalle County; (4) most of the equipment used by SAFE was provided by LaSalle County; and (5) LaSalle County paid the salaries of two of SAFE's three police officers and most of SAFE's operating expenses.  Taking these facts as true and drawing all reasonable inferences from these facts in the Plaintiff's favor, as we must, I believe that the Plaintiff properly stated a claim against the Defendants for unjust enrichment.

14

¶ 40     For the reasons set forth above, I would reverse the trial court's dismissal of the Plaintiff's complaint and remand for further proceedings.